PECOS & N. T. RY. CO. v. ROSENBLOOM et al.

(Court of Civil Appeals of Texas. Amarillo. Oct. 28, 1911. Rehearing Denied Nov. 24, 1911.)[1]

1. APPEAL AND ERROR (§ 1078*) — BRIEFS—FAILURE TO ASSIGN ERROR—EFFECT.

Under the court rules, assignments of error not urged in appellant's brief will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1078.*]

2. COURTS (§ 289*)—JURISDICTION—SUBJECT-MATTER — LAWS RELATING TO COMMERCE—EMPLOYER'S LIABILITY ACT.

Even if a railroad seal clerk killed just after he had finished inspecting a train contain-

---

[1] This appeal was filed in the Court of Civil Appeals for the Second Supreme Judicial District of Texas at Ft. Worth on December 27, 1910, and transferred to this court by order of the Supreme Court July 1, 1911.

---

ing interstate freight was engaged in interstate commerce when killed by being struck by a switch engine not engaged in interstate commerce, the federal courts would not have jurisdiction of an action for his death under the federal employers' liability law (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1171]), since to give jurisdiction thereunder both the employé injured and the negligent employés must have been engaged in interstate commerce.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 830; Dec. Dig. § 289.*]

3. COURTS (§ 289*)—JURISDICTION—LAWS RELATING TO COMMERCE—EMPLOYERS' LIABILITY ACT—INTERSTATE COMMERCE.

A seal clerk employed by a railroad company, a large percentage of the shipments over which was destined to interstate points, was killed by a switch engine while crossing another track just after he had finished inspecting and taking a record of a freight train, which contained a number of cars containing interstate shipments, and which was being pulled out of the yards when decedent was struck; his purpose in crossing the other track not being shown. Held, that decedent was not engaged in interstate commerce when killed so as to give the federal courts jurisdiction of an action for his death under the federal employer's liability law (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1909, p. 1171]).

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 830; Dec. Dig. § 289.*]

4. COURTS (§ 255*)—FEDERAL COURTS—JURISDICTION.

The federal courts are entitled to jurisdiction only when the facts necessary to confer jurisdiction appear with reasonable clearness and certainty.

[Ed. Note.—For other cases, see Courts. Dec. Dig. § 255.*]

5. MASTER AND SERVANT (§ 228*)—INJURIES—DISCOVERED PERIL—EFFECT OF STATUTE.

Laws 1909 (1st Ex. Sess.) c. 10, § 2, provides that in all actions against a railroad company for an employé's death the fact that the employé may have been also negligent shall not bar a recovery, but the damages shall be diminished in proportion to his negligence, provided that an employé shall not be held negligent where the carrier's violation of the statute for the safety of employés contributed to the injury. Held, construing the act of 1909, in view of the prior rules as to assumption of risk and contributory negligence, and of the act of 1905 (Laws 1905, c. 163), abolishing the plea of assumed risk in certain cases, that the act of 1909 did not in any way affect the employer's liability for injuries to an employé in cases of discovered peril.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 228.*]

6. STATUTES (§ 184*) — CONSTRUCTION — PURPOSE OF STATUTE.

In construing a statute, especially where its language is ambiguous, the law on the subject before its enactment and the evil sought to be remedied should be ascertained, if possible.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 184.*]

7. TRIAL (§ 191*)—INSTRUCTIONS — ASSUMING FACTS.

In an action for the death of a railroad seal clerk, struck by a ballast car shoved by a switch engine, while crossing the track after inspecting a freight train, the court instructed that if, before the ballast car struck decedent, he was in danger of being struck, and the employés in charge of the switch engine discovered·

his peril before he was struck in time to have avoided striking him by ordinary care, and if such employés, after so discovering his peril, if they did so, failed to exercise ordinary care to avoid running over him, the jury should find for plaintiff. *Held,* that the instruction was not erroneous for assuming that the failure of the employés in charge of the switch engine to exercise ordinary care to avoid running over decedent was negligence causing his death, and was otherwise correct.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431; Dec. Dig. § 191.*]

**8. MASTER AND SERVANT (§ 296*)—INJURIES— INSTRUCTIONS—DISCOVERED PERIL.**

In an action for a railroad employé's death by being struck by a switch engine while cross-ing the track after inspecting another train, de-fendant requested a charge that if, while the switch engine was advancing, decedent was seen so dangerously near the track as to make it reasonably appear that if the engine kept on approaching him, and he did not get out of the way, he might be struck, it was the duty of the engineer and the switch crew to warn him by whistle, etc., of their approach, and that after giving such warning, if they did warn him, the engineer and crew could rely upon de-cedent heeding the warning, and taking proper care for himself, etc., and could proceed until it became apparent to them that decedent would not or could not get off the track, and that if the engineer and crew discovered decedent on or so near the track, etc., it immediately be-came their duty to use all proper means to avoid striking decedent, but such duty did not arise until it became known and apparent to the engineer and crew that decedent was in such danger. *Held,* that the instruction was properly refused because it required the en-gineer and crew, which included each member of the crew, to know of decedent's peril before they were required to exercise care to avoid in-juring him.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 296.*]

**9. TRIAL (§ 260*)—INSTRUCTIONS.**

In an action for a railroad employé's death by being struck by a ballast car shoved by a switch engine, the court instructed that if de-cedent was in peril, and such peril was discov-ered by the employés operating the ballast car and engine, they could presume that decedent would get off the track, unless it became ap-parent to them that he would not do so, so that if they saw decedent on the track, and in dan-ger, and warned him, and if it did not appear that they realized that he would not get off the track in time, by the exercise of ordinary care, to avoid being injured after such warn-ing, the jury should find for defendant. *Held,* that the instruction sufficiently covered the is-sues raised by a special charge requested, that the mere fact that the switch crew saw de-cedent on the track while they were some dis-tance from him and before he was in danger would not warrant a recovery, but that plain-tiff could only recover if some member of the switch crew failed to exercise due care to avoid injuring him after actually discovering his peril.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**10. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—CONSTRUCTION.**

Even if the instruction was not technically correct, it was as favorable to defendant as was warranted, and did not mislead the jury to its prejudice.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4221–4224; Dec. Dig. § 1064.*]

**11. MASTER AND SERVANT (§ 296*)—INJURIES —INSTRUCTIONS—DISCOVERED PERIL.**

In an action for a railroad employé's death by being struck by a switch engine shoving a ballast car, defendant requested a charge that the duty of the "engineer and employés" in charge of the switch engine to exercise care to avoid striking decedent in a position of dis-covered peril would not arise until decedent was in fact in a perilous position, and was known by "such employés" to be so, and until they knew that he could not, or would not be able to, extricate himself therefrom, and, un-less they discovered his perilous position and failed to exercise due care to avoid injuring him thereafter, the jury should find for defend-ant. *Held,* that the requested charge was prop-erly refused as erroneous, because it imposed no duty on any one of the switch crew to act until all of them knew of decedent's peril.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 296.*]

**12. MASTER AND SERVANT (§ 296*)—NEGLI-GENCE—DISCOVERED PERIL.**

In order to impose the duty on the crew of a switch engine which struck another em-ployé on the track to take steps to avoid killing him after discovering his peril, it was not nec-essary that it appear that he could not or would not extricate himself from his dangerous posi-tion.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 296.*]

Appeal from District Court, Potter Coun-ty; L. C. Barrett, Special Judge.

Action by M. A. Rosenbloom and others against the Pecos & Northern Texas Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Terry, Cavin & Mills, Madden, Trulove & Kimbrough, and F. M. Ryburn, for appellant. H. H. Cooper and J. A. Stanford, for appel-lees.

GRAHAM, C. J. Mrs. M. A. Rosenbloom, for herself and as next friend for her minor children, Milton and Matilda Rosenbloom, and for the use and benefit of Minnie and Isaac Rosenbloom, mother and father of her de-ceased husband, M. A. Rosenbloom, sued the Pecos & Northern Texas Railway Company in the district court of Potter county, Tex., to recover damages alleged to have resulted from the negligent killing of M. A. Rosen-bloom while he was engaged in the service of appellant. From a judgment based on the verdict of a jury, rendered on September 13, 1910, in favor of appellees, for the gross sum of $7,000, and apportioned $2,000 each to the surviving wife and the two children and $500 each to the mother and father of deceased, appellant has appealed to this court.

Appellee's third amended petition, on which they went to trial, was filed on June 8, 1910, and, as grounds of negligence on the part of appellant and right of recovery by appellees, alleged, in substance, that Mrs. M. A. Rosen-bloom is the surviving wife of M. A. Rosen-bloom, deceased, and Milton Rosenbloom and Matilda Rosenbloom are their minor chil-dren; that Isaac Rosenbloom and Minnie

Rosenbloom are the father and mother of deceased; that Mrs. M. A. Rosenbloom sues for herself and as next friend for her children and for the use and benefit of such parents; that the Pecos & Northern Texas Railway Company is a corporation, owning and operating a line of railroad extending from Amarillo southwesterly to Plainview and Texico, own extensive switchyards, etc., a Amarillo, having at the point of occurrence in question seven parallel tracks, extending north and south and located east of its main line; that the defendant used such tracks and yards as a place for starting cars, operating its trains, etc.; that a short time prior to November 27, 1909, M. A. Rosenbloom was in the service of defendant in the capacity of ticket clerk (properly seal clerk), his duties being such as to require him to be in and about such yards for the purpose of taking the numbers of all cars coming into and leaving the same and for sealing cars and preserving a record thereof; that tracks 4 and 5 of the seven side tracks which are numbered from 1 to 7 consecutively, going from west to east, are only about 6 feet apart, so that trains in motion running abreast thereon have a little open space between such tracks, barely enough for a man to stand in and not be knocked down; that on the evening of the 27th of November, 1909, there was a long freight train moving out north on track No. 4, and M. A. Rosenbloom, in the performance of his duties, was between tracks 4 and 5, by the side of said train, getting a record of the cars therein; that while he was there so doing with his face to the north, and walking along in the direction such train was moving, and while he was exercising due care and caution, a switch crew, the employés of defendant, pushed a ballast car attached to an engine along on track 5 in the same direction Rosenbloom and such freight train were moving; that such ballast car, which was very wide, was so pushed up behind M. A. Rosenbloom rapidly and with great force and violence, and without ringing the bell or blowing the whistle or giving other warning; that such ballast car while being so moved struck M. A. Rosenbloom, knocked him down, and ran over him, killing him; that at the time the space between such train on track 4 and ballast car and engine on track 5 was so narrow that a man situated between them, if he happened to move to one side or the other, or to stumble and throw his body to one side or the other, would be struck by the moving cars; that, as such ballast car and switch engine so approached Rosenbloom, the employés thereof saw him, and realized that he was in a perilous position, and liable to become confused in attempting to escape, and get caught by one of such trains, and knew that he was liable to sidestep or stumble so as to be struck by the moving cars, and that, if they approached him from behind without his being apprised thereof, he would be plac-

ed in a perilous position, and was likely to be run over and killed, or could have so known by the use of ordinary care; that, so knowing, such switch crew negligently, and without regard for the safety of M. A. Rosenbloom, ran such engine and ballast car rapidly and approached him from behind without giving any warning, so that when such cars were within 18 or 20 feet of M. A. Rosenbloom, either because he did not know of the approach of such engine and car, or because he became confused at the unexpected approach thereof, he attempted to cross switch track No. 5 in front of the car and was run over and killed; that the killing of M. A. Rosenbloom was the result of the negligence of defendant in the manner in which such engine and ballast car were operated and the failure of the crew to give him warning; that the crew in charge of such switch engine and ballast car, seeing M. A. Rosenbloom for a long distance before reaching him, and when about 20 or 25 feet from him, seeing that he was going to cross track No. 5, and realizing that he was in a perilous position, and liable to be run over and killed, after discovering and knowing such dangers and perilous position, failed and refused to exercise all the means at their command to avoid running over and killing him, failing to warn him, to slacken their speed, or in any manner trying to avoid killing him, and that plaintiffs were damaged thereby.

On August 17, 1910, appellant filed its amended answer, being the pleading on which it went to trial and answered appellees' pleading substantially as follows:

(1) By plea to the jurisdiction of the court, asserting that because Rosenbloom was an employé, engaged in interstate commerce, the federal courts alone had jurisdiction.

(2) By general demurrer.

(3) By special exception, pointing out (1) that plaintiffs' petition failed to disclose whether Rosenbloom was engaged in intrastate or interstate commerce; (2) that it failed to show that plaintiff was entitled to sue in the capacity in which she sued; and (3) that it failed to show that death was the natural and proximate result of the alleged negligence.

(4) By general denial.

(5) By special plea, setting up (1) the federal employer's liability act, alleging that Rosenbloom was an employé engaged in interstate commerce so that the federal courts had jurisdiction, and plaintiff had no right to sue in the capacity in which she sues; (2) contributory negligence on the part of M. A. Rosenbloom; and (3) assumed risk and negligent manner in which Rosenbloom conducted himself.

The record shows that certain general demurrers and special exceptions urged by appellees were by the lower court sustained and the rulings excepted to by appellant, and that a general demurrer and certain special exceptions urged by appellant were overrul-

ed, and the rulings excepted to by appellant, but as the appellant has failed to assign error in this court on any of said rulings, and appellees have briefed their cause as if no such rulings had been made by the court below, on appellant's pleadings, we will dispose of the issues only as raised in and presented by the briefs of the parties, respectively, on the record.

[1] As appellant filed many assignments of error below not urged in its brief, under the rules, we will consider only those urged in its brief, and to avoid confusion, where we refer to an assignment in this opinion, it will be by its number according to its order in the brief.

As appellant's second and third assignments, in a general way, bear on the same question, they will be considered together. Under appellant's second and third assignments, it is contended that the court below committed reversible error in failing to give appellant's special charges Nos. 1 and 13, respectively, as requested, which are as follows: Second assignment: "The trial court erred in refusing to give in charge to the jury special charge No. 1, requested by defendant, which is as follows: 'The court charges the jury that plaintiffs are not entitled to recover in the capacity in which they sue herein, and you are therefore instructed to return a verdict for the defendant.'" Third assignment: "The court erred in refusing to give in charge to the jury special charge No. 13, requested by defendant, which is as follows: 'If M. A. Rosenbloom at the time of his death was engaged in examining seals and making record of seals on cars being transported interstate over the line of defendant and other lines of connecting carriers, and if such work was a necessary part and customary work, reasonably carried on by defendant as a part of its business, transporting freight interstate over its line, or if he had then just completed such inspection of said train, and had not yet completed his record and placed it in the place where usually kept, then you will return a verdict for the defendant on its special plea that plaintiff has no right to maintain this suit in the capacity in which she sues.'"

As a basis for the disposition we make of these two assignments, and in connection with the disposition we shall make of other assignments, we find that the following facts are established and proven by the record, and that the record contains no other facts tending to show that M. A. Rosenbloom was at any time engaged in interstate commerce, to wit:

(1) Appellant is a railway corporation, owning and operating a line of railroad, extending from Amarillo southwesterly to the New Mexico-Texas state line at Texico, where it connects with the line of the Eastern Railway Company of New Mexico and its line connects at Amarillo with that of the Southern Kansas Railway Company of Texas.

(2) On and prior to the 27th day of November, 1909, defendant company was engaged in transporting freight and passengers for hire, being a common carrier, duly organized and chartered, under the laws of the state of Texas, and engaged in a railway transportation business.

(3) In connection with its connecting lines, known as the "Santa Fé System" lines and other lines, it was and is engaged in transporting goods and passengers intrastate and interstate, about 85 per cent. of its traffic for the month of November, 1909, having been interstate and about 15 per cent. thereof intrastate.

(4) In connection with its business as such common carrier, it has and owns and owned and was operating extensive switchyards, storage tracks, shops, etc., on and prior to November 27, 1909, at Amarillo, in Potter county, Tex. There were three of its yards, known as the "east," the "middle," and the "west" yards, respectively.

(5) M. A. Rosenbloom became an employé of defendant about the 1st day of November, 1909, at Amarillo, Tex., in the capacity of seal clerk, and continued to be so engaged until the time of his death, which was about 6 o'clock p. m. November 27, 1909.

(6) As such clerk, it was the duty of M. A. Rosenbloom to go in, on, and about said yards, and there seal all incoming and outgoing trains and take a list of the cars in each such train by car numbers and initials, note the condition of each car, especially as to the door being sealed, and seal all unsealed doors, look about icing refrigerator cars, etc., and report cars for icing, etc., and note broken car doors and report losses of freight, etc. Of such matters it was his duty to make a record, which was kept in a book in the yardmaster's office, from which to answer questions and correspondence in the future, making inquiries as to the condition of cars and freight passing through the Amarillo yards.

(7) The yards aforesaid were in constant use day and night during the time Rosenbloom was so engaged with switch engines, with their cars, and incoming and outgoing trains, coming and going constantly.

(8) In said middle yard where Rosenbloom was killed, there were seven switches or yard tracks, all lying east of appellant's main line track, extending practically north and south, parallel, and numbered from 1 to 7, inclusive, and consecutively from west to east.

(9) At the time of the death of Rosenbloom there was a long freight train about 34 cars, leaving from track No. 4 in these middle yards to go out at the north end of the line, and thence on to Wynoka, Okl., interstate over the line of the Southern Kansas Railway Company. Such train was made up of cars which had come in from New Mexico

over appellant's line, and was going out over the Southern Kansas to points in Oklahoma, Kansas, Missouri, Illinois, and other states, excepting one car, which was well drilling tools, consigned to Panhandle, a point in Carson county, Tex., which would be reached without leaving the state, and which car of tools had originated at Amarillo, Tex., to be used in work on the company's water station at Panhandle.

(10) While such train was moving out slowly from said track, Rosenbloom was going down between tracks 4 and 5 by the side of said out-going train from south to north, for what purpose is not shown by the testimony, nor is it shown what he had immediately preceding his being killed been doing.

(11) As such out-going train and Rosenbloom were so moving, one of the day switch cars having coupled an engine on to the south end of a ballast car, somewhere to the south of where Rosenbloom was, came north (the same direction as the out-going train and Rosenbloom were moving) on track 5, intending to go a few car lengths beyond where they struck Rosenbloom, and there couple onto some coal cars and pull them back south on track 5. The crew handling this switch engine and ballast car were not engaged in interstate commerce at the time Rosenbloom was killed.

(12) As this switch engine and ballast car were about to pass Rosenbloom from some cause and by some means, which are in dispute, he got in front of the ballast car, was knocked down, run over, and killed.

(13) Rosenbloom was the husband of Mrs. M. A. Rosenbloom, plaintiff, the father of Milton and Matilda, and the son of Isaac and Minnie Rosenbloom, was 26 years old at the time of his death, and earning $60 per month, and during the time of his employment he had resided with his family at Amarillo, Tex.

We are inclined to the opinion that appellant is not in a position, under the condition of its pleadings, to urge the questions sought to be raised under these assignments, for the reason that the portion of its pleading challenging the right of appellees to prosecute this suit in the capacity they do is not under oath, as required by article 1265, Sayles' Civil Statutes; but, as there may be some question about the correctness of this view, we will dispose of them as if appellant was in a position legally to urge them.

[2] As appellees' pleadings allege no fact tending to show that M. A. Rosenbloom was at any time engaged in interstate commerce, and the facts above stated contain everything that can be fairly drawn from the record which could in any way be construed as even tending to show that he was so engaged at the time he received the injuries resulting in his death, we think the evidence wholly fails to raise the issue sought to be submitted in special charges Nos. 1 and 13, the re-

fusal to give which is complained of under assignments 2 and 3, respectively.

Under the authorities cited by appellant, if the evidence had affirmatively shown that Rosenbloom, at the time of receiving the injuries which resulted in his death, was actually engaged in the performance of his duties, in connection with the freight train which was just leaving and which was made up of cars containing interstate as well as intrastate freight, without showing which character of freight he was then giving his attention to, and if the testimony had tended to show that those engaged in the operation of the switch engine were also engaged in interstate commerce, we would incline to the opinion that a question was raised as to whether or not Rosenbloom was engaged in interstate commerce as an employé at the time he was killed, or if the evidence, as a whole, had tended to show that at the time Rosenbloom was killed he was as an employé of appellant, performing his duties in connection with one of the cars laden with interstate freight, and the evidence as a whole had also tended to show that those operating the engine and ballast car were engaged in interstate commerce, we would incline to the opinion that a question had been raised as to whether or not Rosenbloom was engaged in interstate commerce within the meaning of the federal law, when considered in connection with the duties pertaining to his employment. The evidence, however, taken as a whole, as we view it, fails to raise such an issue as it would appear from the language used by District Judge Whitson in the case of Zykos v. Oregon R. & Nav. Co. (C. C.) 179 Fed. 893, that it would be necessary for those operating the engine and ballast car, as well as Rosenbloom, to have been engaged in interstate commerce before the questions sought to be presented by appellant really existed.

In discussing the facts and circumstances necessary to entitle an employé to the benefit of the federal employer's liability act, Judge Whitson, in the case above cited, uses the following language: "It is not necessary, in view of the facts disclosed by the complaint, to go further than to hold that interstate and intrastate service are separable by upholding liability when the injury results from the negligence of fellow servants engaged in interstate commerce, and denying it when resulting from the negligence of an intrastate employé to one engaged in interstate commerce." Again, in the same opinion, the same judge uses the following language: "That it was the purpose to make an interstate carrier liable to an employé engaged in interstate commerce for the negligence of a fellow servant also engaged in such commerce is beyond controversy." From the above language it would appear that the proper construction of the federal statute would be that before a federal question was

raised the evidence must tend to show, not only that the injured party was engaged in interstate commerce, but that the servant inflicting the injury, which in law is the principal, was also so engaged. We think the reasoning in the majority opinion in the case of Howard v. Illinois Central Railway Company, 207 U. S. 463, 28 Sup. Ct. 40, 52 L. Ed. 151, sustains the proposition just announced.

[3, 4] If, however, it were conceded that the evidence tends to show that Rosenbloom had been engaged in interstate commerce immediately before he was killed by checking the out-going freight train or inspecting the seals of cars therein, and otherwise performing his duties under his employment in connection therewith, and the evidence had also' tended to show that those in charge of the engine and ballast car were engaged in interstate commerce, as the evidence shows without question that at the time Rosenbloom was killed the out-going freight train was leaving the yards at a speed of from eight to ten miles an hour, that Rosenbloom had ceased to perform any service in connection therewith and was going from said train, and there is no evidence tending to show what his purpose in so doing was, unless it tends to show that he was attempting to cross track 5 to reach a place of safety, we think it cannot be successfully contended that he was at the time he was killed engaged in interstate commerce within the meaning of the federal statute, unless the mere fact that his general duties required him to perform service in connection with interstate commerce, as well as intrastate commerce in Amarillo, coupled with the further fact that during the month of November, 1909, of the total business handled by his employer in Amarillo about 85 per cent. of same was interstate commerce, and the remaining 15 per cent. was intrastate commerce, and the further fact that the duties of Rosenbloom required that he keep a record of such data as he might procure from having investigated and inspected the out-going train, would have the effect of proving or tending to prove that as a result of the nature of his employment he was engaged in interstate commerce within the meaning of the federal statute at the time he was killed. This we do not believe, as under our governmental policy the federal government, including the federal courts, acquires jurisdiction only when the facts necessary to bestow such jurisdiction appear with reasonable clearness and certainty. For the reasons stated we hold that the evidence did not raise the question of whether or not Rosenbloom was at the time he was killed engaged in interstate commerce, and we therefore overrule appellant's second and third assignments of error.

[5] Under appellant's first assignment, complaint is made that the court below refused to give in charge to the jury special charge No. 10, requested by it, which is as follows: "If the jury find from the evidence that defendant's engineer and switch crew in charge of the switch engine and ballast car that ran over and killed M. A. Rosenbloom, or any one or more of them were negligent, as is alleged by plaintiff, and that such negligence was a producing cause of the death of M. A. Rosenbloom, and if you also find that M. A. Rosenbloom was himself guilty of negligence, and that his negligence, concurring with that of such employé or employés of defendant, was a producing cause of his death, and if because of such negligence, if any, on the part of defendant's employé or employés you determine to find for plaintiff, then it will be your duty to diminish the damages you find in proportion to the amount of negligence attributable to M. A. Rosenbloom." The court in his charge to the jury confined appellant's right to recover to the doctrine of discovered peril, as indicated below, in that, after defining "ordinary care," "negligence," and "proximate cause" in the first three paragraphs of the charge, he in the fourth paragraph charged the jury as follows: "If you find and believe from a preponderance of the evidence that before the ballast car struck the said M. A. Rosenbloom that the said M. A. Rosenbloom was in peril and danger of being struck by a ballast car and engine attached, and you further believe from the evidence that the employés of the defendant company in charge of said ballast car and engine attached, before the said .M. A. Rosenbloom was struck by said ballast car, discovered that the said M. A. Rosenbloom was in peril, and that the said employés so discovered the peril of the said M. A. Rosenbloom in time to have avoided running against him by the exercise of ordinary care, and that the employés operating said engine and ballast car killed the deceased, after so discovering the peril and danger to the said M. A. Rosenbloom, if they did so, failed to exercise ordinary care to avoid running over and killing him, then and in such event you will find for the plaintiff." No other portions of the charge given authorized a recovery by appellees.

A proper disposition of appellant's first assignment depends upon the construction that should be given section 2 of an act of the Legislature of the state of Texas passed in 1909, found at page 280 of the Session Acts, which reads as follows: "That in all actions wherever brought against any such common carrier or railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employé, or where such injuries have resulted in death, the fact that the employé may have been guilty of contributory negligence shall not bar recovery, but the damage shall be diminished by the jury in proportion to the amount of negligence attributable to such employé."

[6] In properly construing any legislative enactment, especially where the act because

of the language used is susceptible of more than one construction, it is necessary to know what the law was on the same subject before the act was passed, and, if possible, to learn the corrections sought to be made of the existing law; that is, the evil sought to be remedied. We will therefore first decide what the law was bearing on the question under consideration before the passage of said act of 1909, and from that law, as construed by the courts, ascertain, if possible, what evil the Legislature sought to remedy by the passage thereof. Prior to 1905 it had been the law in this state for many years that no recovery would lie for damages or injuries resulting in death of an employé where the injury or death resulted from one of the risks ordinarily incident to the employment, known as the "doctrine of assumed risk"; also, that as a general proposition or rule, where both the employer and the employé were guilty of negligence proximately causing the injury or death, neither could recover, known as the "doctrine of contributory negligence"; but for many years prior to the passage of said act of 1909 there had been recognized by the courts of this state, as there had been by the courts of many of the other states, and by the federal courts, an exception to this doctrine of contributory negligence, to the effect that even if both parties were guilty of negligence, if one of them actually discovered the perilous position in which the other had been placed, even as a result of his own negligence or wrong, it was the duty of the one making such discovery to use a high degree of care thereafter to avoid injuring or killing the other, and a failure to use such care, if the proximate cause of the injury or death, subjected such one so inflicting such injury or death to a recovery for damages, arising from such independent act of negligence, called the "doctrine of discovered peril or last clear chance." Our laws thus standing, the Legislature of this state in 1905 passed a law on the subject of assumed risk, which is as follows: "That in any suit against a person, corporation or receiver, operating a railroad or street railway, for damages for the death or personal injury of an employé or servant, caused by the wrong or negligence of such person, corporation, or receiver, that the plea of assumed risk of the deceased or injured employé, where the grounds of the plea is knowledge or means of knowledge of the defect and danger which caused the injury or death, shall not be available in the following cases: First: Where such employé had an opportunity before being injured or killed to inform the employer or superior intrusted by the employer with the authority to remedy or cause to be remedied the defect and does notify or cause to be notified the employer or superior thereof, within a reasonable time, provided it shall not be necessary to give such information where the employer or such superior thereof already knows of the defect.

Second: Where a person of ordinary care would have continued in the service with the knowledge of the defect and danger and in such case it shall not be necessary that the servant or employé give notice of the defect as provided in subdivision 1 hereof." Laws 1905, c. 163.

Referring to the effect this act had on the assumed risk doctrine in this state, Justice Brown, speaking for the Supreme Court, in the case of H. & T. C. Railway Co. v. Alexander, 102 Tex. 497, 119 S. W. 1135, used this language: "The statute did not abolish the rule of the law that one who enters the service of a railroad company assumes all risks which are ordinarily incident to his employment, also the risks which are known to him, or that he should discover in the proper discharge of his duties. The effect of that act is to deny to the railroad company the defense of assumed risk in case 'the defect or danger' which causes the injury was such that a person of ordinary prudence under like circumstances 'would have continued in the service.' The change is favorable to the employé, which we cannot explain better than to contrast its application with the previous rule as heretofore applied." The court then proceeds to refer to the fact that in the case of Railway Company v. Drew, 59 Tex. 10, 46 Am. Rep. 261, that court had held that Drew was not entitled to recover because of the law as it then existed, and then announced the proposition that under the law as it existed when the Alexander Case was decided Drew would have been entitled to recover by showing that the condition of the locomotive and the surrounding circumstances were such that a prudent man, situated as he was, would have used the locomotive as he did; the Drew Case having been one in which the engineer had used an engine without a pilot, knowing that the engine had no pilot, and the injuries having resulted to him because of the want of a pilot. On April 13, 1909, the Legislature passed a law which we think enlarges the rights of employés, and imposes more burdens on the employer than had prior thereto existed under the contributory negligence doctrine, above announced, section 2 of which is as follows: "That in all actions hereafter brought against any such common carrier by (or) railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employé, or where such injuries have resulted in his death, the fact that the employé may have been guilty of contributory negligence shall not bar a recovery but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé; provided that no such employé who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violations by such common carrier of any statute for the safety of employés contributed to the injury or death of such

employé." An inspection of the entire act, from which section 2 is copied above, shows that no act which had not been formerly held to be contributory' negligence could under this act be held to be such.

From the foregoing it would appear that at the time the act under consideration was passed the doctrine of assumed risk formerly existing had been as a result of the act of 1905, as construed in the case of H. & T. C. Ry. v. Alexander, so modified as to permit a recovery by the employé under circumstances which would have barred a recovery prior thereto, and apparently so modifying the former doctrine of assumed risk that it practically became one of contributory negligence as to matters mentioned in the act. No court, so far as we are aware, has held that the act of 1905 or of April 13, 1909, in any way affected the doctrine of discovered peril above announced, and we fail to see how rights under this doctrine could be affected by either the act of 1905 or of 1909, since the very doctrine itself presupposes that the injured party had been guilty of a wrong, but for which the injury would not have occurred, and the wrong may have been negligence on his part. The right of recovery in discovered peril cases appears to be based on the idea that the injury has resulted in part from an independent cause, arising after the wrong on the part of the person injured, though the injury would not have occurred but for said wrong. Judge Denman, speaking for the Supreme Court of this state, in the case of Texas & Pacific Railway Company v. Breadow, 90 Tex. 26, 36 S. W. 410, in discussing the right of recovery under this doctrine, uses this language: "If defendant, through parties in charge of the engine, knew of Breadow's peril in time to have avoided same, such knowledge imposed upon it the new duty of using every means then within its power consistent with the safety of the engine to avoid running him down; and a failure so to do would render it liable, notwithstanding he may have been guilty of contributory negligence in being exposed to the peril. This new duty and liability for its breach is imposed upon principles of humanity and public policy to prevent what would otherwise be, as far as civil liability is concerned, the licensed destruction of persons negligently exposing themselves to peril."

It being clear that neither the act of 1905 nor that of 1909 was intended to enlarge the defenses of employers or to destroy any right theretofore existing in the employé which had existed prior thereto, and to give the act of 1909 the construction contended for by appellant, would work a destruction of a right enjoyed by employés prior thereto, we conclude that the act of 1909 in no way limits the right theretofore existing in discovered peril cases as to the employé, and

for these reasons we overrule appellant's first assignment of error.

[7] Under appellant's fifth assignment, complaint is made that the court erred in giving in charge to the jury paragraph 4 of its charge, which has herein been copied, it being claimed that said portion of the charge assumes that a failure on the part of appellant's employés to exercise ordinary care to avoid running over Rosenbloom was negligence and the cause of his death, and does not require the jury to find from a preponderance of the evidence that defendant's servants were, in fact, negligent, and that such negligence caused the death of Rosenbloom, as a condition precedent to returning a verdict for plaintiff. We have critically examined the portion of the charge complained of, and think it not subject to the objections made. We also think it submitted to the jury the law of the case under the evidence in a substantially correct form and substance, and in as favorable a manner as appellant's rights under the law warranted. We therefore overrule its fifth assignment of error.

[8] Complaint is made by appellant under its sixth assignment that the court below erred in failing to give in charge to the jury its ninth requested special charge, which is as follows: "If while the switch engine and ballast car were being run along down track No. 5 the deceased, M. A. Rosenbloom, was seen so dangerously near the track ahead of him as to make it reasonably appear that if the engine and car kept on running towards Rosenbloom, and he did not get out of the way, he might be struck by the car and hurt or killed, it was the duty of the engineer and switch crew to give him some warning of the approach by blowing the whistle, ringing the bell, hollering at him or some other warning, such as they could reasonably expect under the circumstances would be sufficient to attract the attention of a reasonably prudent person in possession of his natural sense and desirous of securing his own safety. After giving such signal or warning, if they did give a signal or warning, said engineer and crew had a right to presume and rely upon M. A. Rosenbloom heeding such signal or warning, and exercise such reasonable care to clear the track for his own safety as a reasonably prudent person, in the possession of all his natural senses and faculties, would have exercised under the existing circumstances, and to proceed with the engine and car along said track accordingly, until it became apparent to such engineer and switch crew (if it did) that M. A. Rosenbloom either would not, or could not, clear said track and save himself from injury by such car and engine. If said engineer and crew discovered said Rosenbloom on, or so dangerously near, said track, that it was reasonably apparent to them that he would

not or could not save himself by getting out of the way of such passing engine and car, but would be struck and injured if they kept going, it immediately, upon so learning that Rosenbloom was in such perilous position, and either would not or could not save himself, became the duty of such engineer and crew to use all means at their command, consistent with the safety of others, to avoid running onto and injuring the said Rosenbloom; but such duty did not arise until it became known and apparent to such engineer and crew that Rosenbloom was in such danger, and that he could not or would not save himself. Unless you find from the evidence that Rosenbloom was so in danger, and by said engineer and crew discovered to be in such danger, when he could not or would not save himself by the use of such efforts as a reasonably prudent person in possession of all his natural faculties and senses would have exercised for his own safety, and that such engineer and crew in charge of such switch engine and ballast car failed to exercise all means at their command, consistent with the safety of others, to avoid striking and injuring him and that such failure on their part was the cause of the death of Rosenbloom, then you will find for the defendant." We think the court below was warranted in refusing to give in charge to the jury said special charge, because same was so worded as to require that appellant's engineer and crew (which of course included each member of the crew pulling the engine) knew of the peril of Rosenbloom before the engineer or either member of the crew was required to exercise care to avoid injuring Rosenbloom. This is not the law, but it was the duty of any one of the members of said crew, on discovering that Rosenbloom was in peril, to at once use the means at hand to avoid the injury, and not wait until each member or any other member of the crew discovered his peril.

[9, 10] It was the evident purpose of appellant's counsel to have the special charge inform the jury, in substance, that the mere fact that the crew or some member thereof saw Rosenbloom on or near the track while they were yet some distance from him and before he was in any peril would not warrant a recovery, but that a recovery could only be had if some member of the crew failed to exercise proper care to avoid injuring him, after actually discovering that he was in peril, and that such failure to act resulted in the injury, as was held in the case of Texas & Pacific Railway Company v. Roberts, 14 Tex. Civ. App. 532, 37 S. W. 870. Under the facts in the case, such an issue was perhaps raised, but we think it was fairly submitted in special charge No. 9, prepared by the court and given to the jury, which is as follows: "Gentlemen of the jury, if you find that deceased was in peril, and such peril was discovered by the servants operating the ballast car and engine, then said servants had the right to presume that said deceased would get off the track unless it became apparent to them he would not do so. Now if you find that defendant, through the servants operating the engine and ballast car, saw deceased on the track, and in danger, and they warned him, and you fail to find said servants realized that he would not get off the track or out of the way in time by the exercise of ordinary care to have avoided injuring him, after such warning, you will find for the defendant." We do not hold that this charge was technically correct, but we do hold that it sufficiently covered the issue raised in appellant's special charge refused, and that it submitted the law in as favorable a manner as appellant's rights warranted, and that it did not mislead the jury to appellant's detriment. For the reasons given, the sixth assignment will be overruled.

[11] Under its seventh assignment, appellant complains of a failure to give in charge to the jury its twelfth special charge, which is as follows: "The court charges the jury that the duty of the defendant's engineer and employés in charge of the switch engine and ballast car in question to exercise care to avoid striking and killing M. A. Rosenbloom in a position of discovered peril would not arise until M. A. Rosenbloom was in fact in a perilous position, and until he was known by such employés of the defendant to be in such perilous position, and that he could not or would not be able to extricate himself from such perilous position; and unless they discovered him in such perilous position, and failed to exercise due care to avoid injuring him after so discovering him in such perilous position, you will find for the defendant." We think the court did not err in refusing this special charge, because it imposed no duty on any one of the employés to act unless and until all knew of Rosenbloom's peril, and therefore the seventh assignment will be overruled.

Under appellant's fourth assignment complaint is made that the court erred in overruling the twenty-ninth ground in its motion for a new trial, which is as follows: "The verdict and judgment of the jury are contrary to and unsupported by the law and the facts in this cause, for this: (2) The evidence entirely fails to show any actionable negligence upon the part of the defendant, its agents, servants, and employés in the manner or form as stated in plaintiff's original petition. (b) The evidence shows conclusively that the deceased, M. A. Rosenbloom, was negligent, and that his negligence, without any concurrent negligence upon the part of the defendants or its agents or employés, was the sole producing cause of the death of M. A. Rosenbloom. (c) There is absolutely no testimony whatever to show that M. A.

Rosenbloom became and was in a perilous position from which he could not and would not extricate himself, and that the engineer or other employés of the defendant in charge of the switch engine and ballast car in question saw or discovered M. A. Rosenbloom in such perilous position, failed to exercise due care to avoid injuring him. (d) The evidence shows clearly that M. A. Rosenbloom walked upon the track immediately in front of the ballast car, and that defendant's employés, members of the switch engine, especially the engineer, could not possibly after discovering M. A. Rosenbloom on the track, or going on the track in front of the car, have avoided striking him with the ballast car in question."

As the evidence shows, without contradiction, that the operatives of the switch engine and car that ran over and killed Rosenbloom discovered that he was in a perilous position while he was yet somewhere between 10 and 30 feet from any portion of the engine or car attached thereto, and the evidence in the record is sufficient to sustain the conclusions that the engine and car could have been stopped with the means at hand by the proper use thereof within less even than seven feet, and that the engine and car were at the time in good condition, but that they ran about 60 to 70 feet after Rosenbloom's perilous position was actually discovered, and there is also evidence in the record sufficient to sustain the conclusion that, if the engine and car had been stopped in less than 30 feet after Rosenbloom's perilous position had been actually discovered by appellant's employés in charge of said engine and car, Rosenbloom would not have been injured or killed, no error was committed in overruling subdivision "a" of the twenty-ninth ground of appellant's motion for a new trial. While the evidence does tend to show that Rosenbloom had been guilty of negligence in going on the track at the time and under the circumstances, yet there is evidence in the record, if believed by the jury, sufficient to support the conclusion that appellant's employés in charge of the switch engine and car were guilty of negligence in having failed to avoid running over and killing Rosenbloom after they actually discovered his peril, and for these reasons the court did not err in overruling subdivision "b" of the twenty-ninth ground of appellant's motion for a new trial.

[12] We do not believe it necessary for appellees to have shown, not only that appellant's servants in charge of the switch engine and car discovered that Rosenbloom was in peril, but also to prove that he could not or would not extricate himself before they were required in law to take steps to avoid injuring or killing him, and, as other portions of the complaint made in subdivision

"c" of the twenty-ninth ground of the motion for a new trial have been disposed of in what we have said in disposing of subdivision "a" thereof, we think the court did not err in overruling said subdivision "c."

What we have said in disposing of subdivisions "a" and "b" of the twenty-ninth ground of appellant's motion for a new trial necessarily results in our holding that the court did not err in overruling subdivision "d" thereof, and, as this disposes of each ground of objection urged under appellant's fourth assignment, adversely to it, we overrule said assignment.

Believing that the material issues arising on the trial of the cause were submitted to the jury by the court in its charge in such form and substance as to correctly inform the jury as to the law of the case, and the jury having found against appellant on the facts, and there appearing no reversible error in the record, the judgment of the trial court will be affirmed, and it is so ordered.