Texas and Pacific Railway Company v. Johanna Breadow.

Decided June 18, 1896.

1. Contributory Negligence—Discovered Peril—Subsequent Negligence.

If those operating a railway engine discover the peril of one in danger upon or near the track in time to avoid injuring him, a new duty is imposed, of using every means consistent with the safety of the engine to avoid running him down, and default therein would render their employer liable,—on principles of humanity and public policy and to prevent the licensed destruction of persons negligently exposing themselves to peril,—notwithstanding the person so injured may have been guilty of contributory negligence in being exposed to the peril. But this principle has no application in the absence of actual knowledge of the peril on the part of the persons inflicting the injury, and the burden of proof is on plaintiff to show, not that they might have acquired such knowledge, but that they actually possessed it. (Pp. 30, 31.)

2. Same—Knowledge of Danger—Insufficient Evidence.

Plaintiff's husband was killed by being struck by a switch engine while walking in the switching grounds of a railway, being, when struck, dangerously close to the edge of the side track, on which the engine approached him from behind, and which was eight or nine feet from the main line. The fireman testified to seeing him, forty or fifty feet ahead of the engine, but then walking on the main track and in a position of safety, and that, his attention being drawn elsewhere, he then saw him no more till after the injury. No one else on the engine saw deceased. Other bystanders saw him between the tracks, when he first entered on them, and afterwards, about the instant he was struck, but not at the time he was admitted to have been seen by the fireman. Held, that under this evidence the court erred in submitting the issue of plaintiff's right to recover, notwithstanding contributory negligence by deceased, if those operating the engine saw his dangerous position in time to have avoided the accident and failed to make any effort to do so. (Pp. 30 to 32.)

Error to Court of Civil Appeals, Fourth District, in an appeal from Dallas County.

The opinion states the case. Plaintiff had judgment in the trial court. Upon the point involved in this opinion the appellate court first reversed the case, holding the evidence insufficient to justify a submission of the question, but upon motion for rehearing by appellee it was concluded that the evidence was sufficient for that purpose and the judgment was affirmed, and a motion of appellant for rehearing afterwards overruled. The three opinions may be found in 35 S. W. Rep., 490.

*Alexander, Clark & Hall,* for plaintiff in error.—The Court of Civil Appeals committed no error in its consideration of the ninth assignment of error, upon the original submission of the cause, wherein it sus-

tained appellant; but did commit error on appellee's motion for rehearing in altering its conclusion. The evidence did not warrant the trial court in instructing the jury that though deceased's contributory negligence directly contributed to the accident, the plaintiff could recover herein, if they believed from the evidence that the persons in charge of the engine at the time saw the dangerous position of Breadow in time to have avoided the accident and failed to make any effort to do so, because there was no evidence to that effect. Such ruling is in conflict with opinions in Railway v. Wilkins, (Texas Civ. App.), 32 S. W. Rep., 352; also McDonald v. Railway, 86 Texas, 1; Railway v. McKernan, 82 Texas, 204, and Railway v. Brown, 2 Texas Civ. App., 281; Railway v. Gilmore, 62 Texas, 391; Railway Company v. Peary, (Texas Sup. Ct.) 30 S. W. Rep., 57; Railway v. Platzer, 73 Texas, 124; Railway v. Faber, 63 Texas, 344; Box v. Wood, 65 Texas, 166; Railway v. McDonald, 86 Texas, 1; Martin v. Railway, (Texas Sup. Ct.) 26 S. W. Rep., 1053.

*Leake, Henry & Reeves, W. C. Kimbrough,* and *Dudley G. Wooten,* for defendant in error. There was no error by the Court of Civil Appeals in its action in granting the motion for rehearing filed by the defendants in error, and in holding that the ninth assignment of error presented by appellant (plaintiff in error) was not well taken, and that the charge of the court in the respect complained of in said assignment contained no error. Railway v. Platzer, 73 Texas, 124; McDonald v. Railway, 86 Texas, 14; Brown v. Griffin, 71 Texas, 659, 660; Railway v. Hewett, 67 Texas, 479, 480; Hargis v. Railway, 75 Texas, 23; Railway v. Smith, 52 Texas, 178; Railway v. Cocke, 64 Texas, 158; Railway v. Hauks 78 Texas, 300; Railway v. Watkins, 88 Texas, 24-25; Railway v. Weisen, 65 Texas, 443; Railway v. Robinson, 4 C. A., 125; Railway v. Shieder, 88 Texas, 163, 167; Railway v. Sanches, 88 Texas, 119-120.

DENMAN, ASSOCIATE JUSTICE.—Defendant in error sued plaintiff in error to recover damages for injuries inflicted upon her husband, Fred Breadow, March 7, 1892, resulting in his death.

So far as it bears upon the question we give the substance of the testimony.

Paul Lake testified for plaintiff: "Breadow left me directly after the switch engine passed; he went straight across to the main track and walked down the middle, between the main track and passing track. At the time I was working there that was all level and people used to walk between the two tracks. The path was like a snake, you know, just wherever they walked; it would go along in the center a piece, and then go to the side. It is all level around about the depot on both sides. There is a tow path commences up there at the shanty and it goes from one track over to the other, just like a snake, between main and passing track. At the time—the time that Breadow got killed— the tow path was right close to the rail there, next to passing track.

Right opposite where I was the path ran in the center. Below where I was standing the path ran over close to the rail of the passing track. Just about on top of the ends of the ties; the ends of the ties are about a foot outside the rail, and the dirt was just as high as the rail, and people would walk along there. When Breadow left me he went right down that way; he went straight across to the path when he left me. After he left me a freight engine and some cars behind it went by me, and I was kneeling on the rail on the rip track looking under some cars, and about the time I looked under I heard a yell and I looked around and I saw Breadow falling. After Breadow left me I kneeled down on the rail to look under the cars. The freight engine that passed me after Breadow left came from Forth Worth, and after she had passed about a minute or so I heard a yell and looked around and saw Breadow falling. The freight engine came from the west and was going east; it was on the passing track. It was about a half minute after it passed that I heard the yell, probably not so long. When I heard the yell I ran down there. I was kneeling down when I heard the yell, and then I looked down to where Breadow was, east of there, and saw Breadow falling down. The cause of Breadow falling was that the beams of the engine struck in the back; the front timber of the engine struck him in the back. When I saw Breadow fall down he was facing east. At the time it struck Breadow the engine was going pretty fast, about twelve miles an hour. The fireman and a brakeman were on the engine at the time. The brakeman's name was Weller. * * * * When Breadow left me and started down east he was going home; he went in the path I have described; I did not see him walking in the path, but I think he did, though. The last time I saw him he got right over here between main and passing tracks, in the path, and then I did not pay any attention to him until I heard him yell; the last time I saw him he had gotten over in the path, but between that time and when I heard him yell, I don't know where he went. It is about 18 or 20 feet from where I was over to that path. * * * That was a broad way between the main and passing track, nine or ten feet wide. About three people could stand abreast in that space when a train was passing. * * * I did not halloo to Breadow or give him any signal; I did not know he was in any danger; he had plenty of room there to keep out of danger, and I supposed he would keep out of danger. When the engine that struck Breadow passed me the men on it were looking out the window with their faces to the south; one of them was standing facing south in the gangway; the gangway is the place between the cab and the tender; the other man was on the box, and he was also facing south; that was before they struck Breadow—about a half minute before."

Calvin Wilson for plaintiff, testified: "Breadow was walking between the passing track and the main track. I was noticing Breadow before the engine got ten feet from him, and then I saw it was going to strike him, and before I could halloo it struck him. It was just a small

jump between the rails of the two tracks there; Breadow was walking tolerable close to the rail next to the passing track; that tow path is just a foot path and everybody passes up and down on; I have seen thousands and thousands of people walking on that path. I cannot tell who was on the engine that struck Breadow; I never did notice but one man on that engine and he was standing between the engine and the tender, in the gangway; that is where he was when I noticed him; he had his face over towards Katie Thomas' house, south of there. * * * The tow path is between the main track and the passing track; Breadow was closest to the passing track; at that time that path was not straight, but they have straightened it now; it ran first in and then out; the path was not a straight line. * * * I was on Indiana Street at the time of the accident. * * * From the first I observed Mr. Breadow he was going east; I saw him all the time from the time I first saw him until he was struck. * * * I did not see him look back in the direction of the engine; he could have seen it if he had looked back. * * * As near as I can come, the distance from rail to rail, from the passing track to the main track, where that path was, was something · like seven or eight feet at that time; I don't know that the width of that path has been changed any, but it is straightened up now and it is level; that space between those tracks was level and smooth just like that floor out there; there was plenty of room for Breadow to stand in there with trains passing in both directions; I have seen people stand in there with trains going in both directions; that path was smooth and about even with the rails. I did not give Breadow any signal; the reason I did not is simply because the engine struck him before I had time; I had no idea the engine was going to strike him until it did; when it got about ten feet from him I was just fixing to halloo when it struck him. * * * The engine was about 50 or 60 feet above the water tank when I first observed it, that is, the engine was west of the water tank when I first saw it, and Mr. Breadow was above the water-tank. * * * The space between the main track and the passing track is about 8 or 9 feet wide; when I say tow path I mean that there is a main track and a passing track, and between these two tracks is what I call the tow path; that path is eight or nine feet wide; people walk all in between there, and they ride these bicycles in there; there is a beaten track there near the end of the rail, about six or seven feet wide, it looks to me like; it is six or seven feet wide between the tracks; it has been straightened up since, but at that time it was not straight; it is nearer at some places and further out at others; I mean to say that the path was zig-zag; the entire track has been straightened up, the road-bed and everything of that kind; at the time of this accident the space between those tracks was 8 or 9 feet; the place where people usually walked was about six feet wide; the place where Breadow was walking when he was struck was the place where people usually walked."

Weller, the only employee of defendant in charge of the engine, who

is claimed to have seen Breadow before he was struck, testified for defendant by deposition: "As we were going east on the passing track, Breadow was struck by the engine a few feet east of the water tank. When I first saw Breadow he walked around the east end of some cars that were standing on the rip track, not far west from the water tank. He walked onto the rip track and the main track, walking on the main eastward. When I last saw him from our engine on the passing track, he was about forty or fifty feet ahead of us, walking on the main track. I did not see him walk from the main track to the passing track where he was struck. I heard some one calling from the south and looked in that direction and just about that time I went over to the south side of the engine to see if the switch had been properly thrown, and just after that, from the hallooing, I discovered that some one had been struck by the engine. I did not know Breadow was in danger of being struck until after he was struck. I thought he was on the main track, and did not know he had passed over to the passing track that we were running on. No one on the engine knew of Breadow's danger of being struck until after he was struck. I did not observe his danger because I was looking to the south as to one of the switches, and he was on the north side of the track, upon which we were running. * * * Breadow was injured by going from the main track to a point so near the passing track that our engine struck him. The tracks being about ten feet apart. His foot was mashed off and his back was hurt. I saw him immediately after he was injured. As soon as we found that some one had been struck we stopped the engine. I jumped off and ran around and found Breadow on the ground, injured, as already stated. He was conscious and could talk. When I went to him I asked him how in the world he got run over, and he stated that he thought our engine was on the main track, and stepped over towards the passing track to get out of the way of the engine, when it struck him. * * * I did see Breadow step out from behind the cars onto the rip track, and then onto the main track. He was in no danger of being run over when I last saw him on the main track."

The court, among other things not necessary to mention, after defining contributory negligence, charged the jury as follows: "If you believe from the evidence that such contributory negligence directly contributed to the accident, then plaintiff could not recover herein, unless you further believe from the evidence that the persons in charge of the engine at the time saw the dangerous position of Breadow in time to have avoided the accident, and failed to make any effort to do so, in which case the plaintiff would be entitled to recover."

Plaintiff in error complains here, by proper assignment, that the Court of Civil Appeals erred in overruling its assignment of error in that court to the effect that the trial court erred in giving such charge because the evidence did not justify it.

If defendant, through the parties in charge of the engine, knew of

Breadow's peril in time to have avoided same, such knowledge imposed upon it the new duty of using every means then within its power, consistent with the safety of the engine, to avoid running him down, and a failure so to do would render it liable, notwithstanding he may have been guilty of contributory negligence in being exposed to the peril. This new duty and liability for its breach is imposed, upon principles of humanity and public policy, to prevent what would otherwise be, as far as civil liability is concerned, the licensed destruction of persons negligently exposing themselves to peril. The same principle of law which, on grounds of public policy, will not permit a person to recover when his own negligence has proximately contributed to the injury, will not permit the party who has inflicted the injury in violation of such new duty to defend upon the ground of such negligence.

The principle, however, has no application in the absence of actual knowledge, on the part of the person inflicting the injury, of the peril of the party injured, in time to avoid the injury by the use of the means and agencies then at hand. If he had no such knowledge the new duty was not imposed, though it be clear that by the exercise of reasonable care he might have acquired same. The burden of proof was upon plaintiff in this case, in order to recover for a breach of such new duty, to establish, not that the employes might by the exercise of reasonable care have acquired such knowledge, but that they actually possessed it. We are of the opinion that there is no evidence in this record from which the jury could have rightfully found that they had such knowledge. Lake admitted that he "did not see him walking in the path," and said, "The last time I saw him he got right over here between the main and passing tracks in the path, and then I did not pay any attention to him until I heard him yell; the last time I saw him he had gotten over in the path, but between that time and when I heard him yell, I don't know where he went." The evidence of this witness would clearly not authorize the jury to find that, when Weller afterwards saw Breadow 40 or 50 feet in front of the engine, the latter was walking so near the passing track as to be in danger of being struck by the engine. They would have no right to presume that he continued to walk in the crooked path which this witness speaks of until he reached the point where Weller saw him, forty or fifty feet in front of the engine, when the whole space between the ties was smooth and level, or that at such point such path ran so near the track as to place him in imminent danger of being struck by the engine. The testimony of plaintiff's other witness, Wilson, also fails to give the jury any ground for finding that when Breadow was forty or fifty feet in front of the engine, which is the only place the evidence tends to show that the employes operating the engine saw him, he was so near the track as to be in danger of being struck. He discards the theory advanced by the witness Lake of the path being narrow as if made by pedestrians walking continuously over the same route, but says, "When I say tow path I mean that there is a main track and

a passing track, and between these two tracks is what I call the tow path; that path is eight or nine feet wide; people walked in between there; and they ride these bicycles in there; there is a beaten track there at the end of the rail, about six or seven feet wide, it looks to me like," etc. According to this witness, who placed himself "seventy-five or eighty yards" from Breadow, the latter might have been anywhere between the two tracks at the time the engine was "forty or fifty feet" behind him, when Weller claims to have seen him.

Thus we see that there is nothing in the testimony of these two witnesses authorizing the jury to find that at the time Weller claims to have seen Breadow, he was in dangerous proximity to the track and therefore that he was then in peril. If, as all the evidence shows, the employes then ceased to observe him and were looking south when Breadow and the engine creeping upon him were going east, it follows that there was no testimony authorizing the jury to find that they had actual knowledge of his peril, and therefore the court erred in submitting that issue to the jury. We have discussed the question upon the proposition submitted by defendant in error that the jury had the right to accept as true the testimony of Lake and Wilson,—which, however, does not tend to show but to negative the fact that any employe on the engine ever saw Breadow, for they say they were looking south all the time,—and to reject all of the evidence of Weller except the isolated statement that he saw Breadow forty or fifty feet in front of the engine.

It is not necessary to discuss the various other assignments, as the questions will many of them not probably arise on another trial and the special charges will probably be reformed to avoid the objections urged thereto as justifying their refusal. Railway v. McGlamory, recently decided by this court.

For the error above indicated the judgments of the Court of Civil Appeals and the trial court are reversed and the cause remanded.

*Reversed and remanded.*