Missouri, Kansas & Texas Railway Company of Texas v. Lena Stone et al.

Decided March 17, 1900.

1. **Charge of Court—Avoiding Injury to Person on Railroad Track.**

In an action for the death of a person who, while walking on the railroad track, was run down by a train after the engineer had observed, in time to have stopped the train, that he did not appear to have heard the warning whistle, a charge that if those operating the engine saw the deceased and realized that he would not likely leave the track in time to avoid being injured, and thereafter could have avoided injuring him by the use of the means at their command, the jury should find for the plaintiffs, does not present reversible error as leaving the jury to infer that the means at the command of such operatives were not made use of.

2. **Same—Degree of Care.**

Where the engineer saw the deceased on the track 200 to 300 yards ahead of the train, and saw that he did not appear to have heard the warning whistle, a strong wind blowing from the opposite direction, and the deceased was struck with such violence as to throw him thirty-two feet forward and twenty-one feet to the side of the train, it was not reversible error to refuse a charge as to the degree of care that should have been exercised by the operatives of the train in the use of the means at their command to avoid the injury; the real issue in the case being not as to the negligent use of such means, but whether they were in fact used, and the evidence being such as to justify the jury in finding that they were not used.

**3. Same—Matters Not Material to Real Issue of the Case.**

Where plaintiffs conceded that the deceased was a trespasser on the railroad track, and made no complaint in their pleadings of any failure on the part of the railway operatives to keep a proper lookout, or of any negligence on their part to discover the perilous situation of the deceased, but only a failure of such operatives to use the means at their command to avoid the injury, it was not error to refuse charges requested by defendant as to the duty to keep a proper lookout, or as to the failure to discover the perilous situation of the deceased, or that the evidence must be such "as would warrant the deceased in recovering, if he had been injured instead of killed, and was himself suing," or that the operatives had the right to presume that he would leave the track, since these questions were not involved in the real issues of the case.

**4. Negligent Injury to Trespasser on Track—Facts Warranting Recovery.**

For evidence held sufficient to warrant a recovery for the negligent killing of a person walking as a trespasser on the railroad track, through failure of the train operatives to stop the train after discovering his peril, see the opinion.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT.

*T. S. Miller* and *Head, Dillard & Muse,* for appellant.

*Hamp P. Abney* and *Davis & Garnett,* for appellees.

CONNER, CHIEF JUSTICE.—J. T. Stone, on the 12th day of February, 1898, was run over and killed by a north-bound freight train of appellant at a point on the track of the railway about two and one-half miles north of the town of Tioga, in Grayson County, Texas. The deceased was walking northward upon the track. Two freight trains of defendant were going north at the time, one a long train and in advance of the other; the other train a short train, consisting of an engine and four or five loaded cars. Stone was on the track between the rails and was struck by the rear train, and was so seriously hurt that after living a few days he died without ever having regained consciousness. He left surviving him his wife, the appellee Lena Stone, and the appellees David F. Stone, Cassie Stone, and Effie Stone, children and minors.

Suit was instituted by the widow and children of J. T. Stone, deceased, against the defendant to recover damages caused them by his death, in the District Court of Cooke County, Texas, on the 12th day of April, 1898. It was alleged "that at the time of said accident a strong wind was blowing from the north, and said Stone was walking north on said roadbed facing the wind, and that said freight train approached said Stone from the south, and owing to the wind and other noises said Stone was not aware of the approach of said train; that it being daylight, the defendant's fireman, engineer, and brakemen in charge of said train saw said Stone walking upon said track and realized his position of peril in time to have avoided injuring him; that said engineer, fireman, and brakeman knew that said Stone was not aware of the approach of said train, notwithstanding which they negligently, wrongfully, and carelessly run the locomotive to which said train was attached upon and against the said Stone, thereby knocking him from the track and inflicting upon

him mortal injuries, from which he died in less than a week thereafter."

Appellant answered by general denial and a plea of contributory negligence on the part of the deceased. On the 27th of April, 1899, the case was tried in the District Court of Cooke County before a jury, and resulted in a verdict and judgment in favor of the appellees, Mrs. Lena Stone and the three children, for $2500. Hence this appeal.

In addition to the facts hereinbefore recited, it was shown that the long freight train mentioned was about one-fourth of a mile in advance of the short train; that on the approach of the long train deceased had stepped off the track to the east and walked down the side of the dump, there being a "fill" about twelve feet high at the place, some five or six steps, and that after its passage he again approached, stepped upon, and began walking on the track northward. About this time the short train appeared in the "cut," some twelve or fifteen feet deep, 200 or 300 yards to the south. From this point to the point where the deceased was struck there was a distinct down-grade. The engineer of the short train began whistling at a point between 150 and 300 yards from the impact, the fireman at the same time ringing the bell. The day was clear; the track extended northward in a straight line and in plain view for more than one mile from the "cut" mentioned. The deceased gave no evidence of having heard the warning whistle of the engineer, but continued walking along the railway track, which was not at or near any public crossing, without at any time looking back until he was struck and knocked off the track. The first blast of the whistle was the long blast usual at public crossings, and thereafter said engineer continued to give short, quick blasts at short intervals up to the time of contact with deceased. There was a stiff breeze blowing at the time from the north, and the train in advance was making much noise. From the point where deceased's steps showed that he had again gotten upon the track to where the body was found was ninety-seven steps. The body was thirty-two feet north and twenty-one feet east of the point on the track where blood spots indicated the body was struck. About 125 or 150 yards beyond where Stone was killed was a bridge seventy-five yards long, over a creek. North of this are two other bridges not so long.

Appellant's testimony tended to show that the engineer and fireman did everything in their power to stop their train, the engineer testifying that "when he first saw Stone he was just emerging from the 'cut' and Stone was in the act of stepping on the track; * * * that as soon as he saw Stone he sounded the crossing signal. Stone paid no attention to it, and I immediately applied the air brakes by putting on emergency, put sand on the track, and used all the means at my command to avoid striking him. * * * After sounding the whistle I did everything in my power to stop the train. * * * I know nothing else could have been done. Running twenty-five miles an hour on such a train as I had, you could stop in about 1000 feet. * * * After I sounded the road crossing signal I realized that Stone had not heard the signal." Other

witnesses corroborated the testimony of the engineer. There was, however, other evidence tending to show that when the crossing signal sounded the train was from 200 to 300 yards south of Stone; that by the use of the means at command of the operatives the train could have been stopped within less distance than the distance between Stone and the train at the time the engineer testified he realized Stone had not heard the warning signal.

We have found difficulty in the disposition of the second assignment. The court charged the jury in its first paragraph as follows: "If you believe from the evidence that the defendant's agents and servants who were operating the engine which ran against and killed said Stone saw said Stone upon the track and realized that he would not likely leave the track in time to avoid being injured, and if you further believe from the evidence that after they saw said Stone upon the track and realized that he would not likely leave the track in time to avoid being injured, if they did so realize, they could have avoided injuring said Stone by the use of the means at their command, and if you further find that by reason of the death of said Stone the plaintiffs or either of them have sustained any pecuniary loss, you will find for plaintiffs." It is insisted that this was erroneous, in that the jury were thereby instructed to find for plaintiffs if appellant's servants "could have prevented the injury by the use of the means at their command, irrespective of whether they did make use of such means, and leave the jury to infer that the means at the command of said employes were not made use of;" and in that said charge "places on defendant a higher degree of care than is required by law," it being insisted that the degree of care requisite was only such care and prudence to avoid injuring deceased as a man of "ordinary prudence, circumstanced as they were, would have used."

As before indicated, the questions thus presented have not been free from difficulty, but we have finally concluded that no reversible error is presented in the assignment. It is unquestionably true that, under ordinary circumstances, every issuable fact should be submitted to the jury, and not be left to inference; but here the issue as to whether the employes in charge of the train in fact did use all the means at their command to avoid the injury to Stone is so intimately, if not necessarily, connected with the issue actually submitted as to render the omission complained of more technical than real, in view of the uncontroverted fact that the train did with great force knock the deceased off the track and thereby kill him. This the jury found, in answer to the issue actually submitted, could have been prevented by the use of the means at the command of appellant's employes. Such finding necessarily includes, we think, a finding that as a matter of fact said employes did not use the means at their command to prevent the injury in question, and hence no material injury has in this particular been done appellant, and no practical good is to be attained by a reversal on this ground.

As the second phase of the question thus presented, which is in effect also presented by the ninth assignment of error, complaining of the action of the court in refusing a special instruction embodying appellant's view, it would appear at first blush, perhaps, that the court had in the clause of the charge quoted devolved upon appellant greater care than accords with a very general conception of the rule upon the subject pertaining thereto, and there is plausibility in the contention of appellee that the court's charge in this particular is supported by the following authorities: Sanchez v. Railway, 88 Texas, 117; Railway v. Breadow, 90 Texas, 26; Railway v. Staggs, 39 Southwestern Reporter, 295; Railway v. Bishop, 37 Southwestern Reporter, 764.

If appellees' contention as to the effect of these decisions be sound, it follows that the court's charge on this subject was correct, and that said special instruction was properly refused. But while perhaps not necessary, in view of the conclusion reached by us, we nevertheless deem it proper to state in this connection that we think it will be seen by an examination of the authorities quoted that the court is treating of the duty devolving upon the employes to use the means at their command to avoid taking life or inflicting serious injury, and not of the degree of care required of such employes in the use and application of such means, and in our judgment a distinction, in a case calling therefor, should be made in this particular. In other words, while it may be the duty of those in charge of railway trains to use all the means in their power to avoid injury to even a trespasser on the track after the discovery of his peril, and after it reasonably appears that he will not leave the track in time to avoid the injury, yet we think it should be held that in the discovery of the peril, in the instantaneous or later action, and in the use and application of the means at their command, no greater degree of care and prudence should be required than a person or ordinary care and prudence would exercise under the same or similar circumstances. The decisions quoted, as we think, are not to be construed as requiring of such employes the performance at all events of every act that in the light of subsequent events and in the quiet of a judicial determination shall be found as a means which, if used, would have operated to avoid or mitigate an injury. Some allowance should be made for the imperfections of humanity. Those in the operation of a train are often, if not generally, confronted suddenly with the peril and consequent necessity of instant action to save life, and if they then exercise the greatest effort that persons of ordinary skill, care, and prudence would exercise under the same circumstances, it would seem to be, as we have hereinbefore indicated, all that should be required. Notwithstanding this view of the law, however, we have concluded that it is not so pertinently applicable to the real issues in this case, as made by both pleadings and evidence, as to render the charge complained of or the refusal of said special instruction of material injury.

The real issue in this case was whether it was possible to avoid the injury by the use of the means at the command of the operatives of

appellant's train, and whether such means were in fact used. The whole contention is, as insisted upon, on the one hand, that the employes upon the train in question in fact did use all the means at their command to prevent the injury, and on the other hand, that said employes did not so use such means; appellant's own view of this issue being thus presented in its fifth special instruction requested: "If you believe from the evidence that the employes operating defendant's engine did discover deceased on the track, *  *  * and after making it (the discovery of Stone's perilous position) they used all the means at their command for the purpose of checking the engine and to avoid injuring the deceased, you will return a verdict for the defendant." Indeed, appellant in its complaint of this question cites no evidence whatever tending to show *negligence* in the *use* of the *means* at the command of the engineer, nor does the plaintiff's action seem to be predicated upon any allegation or proof of negligence in the use of the means at the command of the engineer or other employe, but rather upon negligence in a *failure* to use such means. If the testimony of such operatives was to be credited, "nothing else could have been done to stop *  *  * sooner." We therefore conclude on the whole that the second and ninth assignments should be overruled.

We are further of opinion that appellant's third, fourth, fifth, sixth, seventh, and eighth assignments of error, relating to the action of the court in refusing special charges, should be overruled. No complaint was made in plaintiff's petition of the failure on the part of appellant's employes to keep a proper lookout, or of any negligence on their part in a failure to discover Stone's perilous position in time to have avoided the injury. Nor was it necessary for the jury to be instructed that, before they could find for plaintiffs, they must find that the evidence was such "as would warrant the deceased in recovering, if he had been injured instead of killed and was himself suing," or that the operatives of the engine had the right to presume Stone would leave the track. While it is undisputed that deceased was a trespasser upon the track, these questions were not involved. The action was predicated upon the assumption that he was such trespasser, and that after the discovery of his perilous position and knowledge that he would not probably leave the track, appellant's employes failed to use the means at their command to avoid injuring him, and the presumption mentioned, if in any case available, no longer obtained, as was held in Railway v. Bishop, supra. We therefore think the issuable facts, so far as presented in said special charges and applicable, were presented by the court in its charge and that said special instructions were properly refused.

The remaining assignments question the action of the court in refusing a peremptory instruction of find for appellant, and the sufficiency of the evidence to support the verdict, it being insisted, in effect, that the undisputed evidence shows that appellant's servants used all the means in their power to avoid the injury complained of, and that they were guilty of no negligence. We have also been unable to concur in this con-

clusion. There was evidence tending to show that appellant's engineer and fireman saw the deceased upon the track in front of them, in the face of a strong breeze and within the sphere of the noise made by the preceding train, without knowledge of their approach; that after the warning given, the operatives of the train killing Stone realized that he would not likely leave the track; that at this time they were 150 or 200 yards from him; that by the use of the means at their command the train could have been stopped before it reached him, or at least its speed could have been so slackened as to have greatly mitigated the injury and increased the probability that Stone would in time have become conscious of the warning signals given; that said train in fact began to check its speed about a half a minute before it struck Stone, after which it stopped very quickly, as testified, in effect, by the witness Mrs. M. M. Pipkin; that the velocity of the train was considerable at the time of striking Stone, as evidenced by the distance to which he was hurled and the character of the injuries inflicted. The record fails to show whether all the cars of the train were supplied with air brakes, or of not, what effort the conductor and brakeman made to lessen the speed of the train, it not appearing that they were produced as witnesses. In view of all which, and of perhaps other evidence of like tendency, we are unable to say that the verdict of the jury is unsupported by the evidence.

Believing that no substantial error has been shown, it is ordered that the judgment below be affirmed.

*Affirmed.*

Writ of error refused.