WHITE v. SOUTHERN KANSAS RY. CO. OF TEXAS.

(Court of Civil Appeals of Texas. Amarillo. April 6, 1912.)

1. TRIAL (§ 252*)—INSTRUCTIONS—EVIDENCE.
Where, in an action to recover for a railroad employé's death, the evidence showed that he was not discovered in a perilous position by any servant of the company until after the injury, the court properly refused to submit to the jury the issue of discovered peril.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

2. APPEAL AND ERROR (§ 1004*) — REVIEW — VERDICT FOR DAMAGES—DEATH.
The Court of Civil Appeals will not disturb the amount of an award for an employé's wrongful death, unless the record shows the jury to have been influenced improperly.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

3. EVIDENCE (§ 12*)—JUDICIAL NOTICE—MASTER AND SERVANT.
On appeal in an action for an employé's wrongful death, the court will not take judicial notice of what the deceased would have earned during the period of his life expectancy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 17; Dec. Dig. § 12.*]

Appeal from District Court, Hemphill County; F. P. Greever, Judge.

Action by S. A. White against the Southern Kansas, Railway Company of Texas. From a judgment for plaintiff, plaintiff appeals. Affirmed.

R. R. Hazelwood, of Amarillo, and Willis & Willis, of Canadian, for appellant. H. E. Hoover, of Canadian, R. E. Taylor, of Henrietta, and Terry, Cavin & Mills, of Galveston, for appellee.

GRAHAM, C. J. This suit originated in the district court of Hemphill county, by appellant, as surviving wife of J. L. White, suing appellee for $10,000 in damages, alleged to have resulted from the death of her husband, caused by the negligence of appellee's servants. A trial was had before a jury, which returned a verdict in favor of appellant against appellee for the sum of $750, on which verdict judgment was rendered, and from which judgment plaintiff has appealed to this court, and submits the case in this court on two assignments of error, as follows:

First assignment: "The court erred in refusing to give to the jury special charge No. 1, requested by plaintiff, which said special charge is here referred to and made a part

hereof, because the evidence fairly raised the issue which plaintiff sought to have submitted to the jury by said special charge." The special charge referred to sought to have submitted to the jury the issue of discovered peril.

Second assignment: "The court erred in overruling and in not granting plaintiff's motion for a new trial on the third ground set forth therein, which is here referred to and made a part of this assignment."

The third ground in the motion for a new trial is as follows: "Because the verdict is so small and insignificant as to shock the court's conscience and sense of justice for this: that it is a matter of common knowledge of which this court and a jury must take cognizance that J. L. White at the time he was killed had an expectancy of life of at least ten years. The uncontroverted evidence showed plaintiff's husband to be a man in perfect health, strong stature, of sober, industrious, economic habits; that he would therefore have probably lived longer than the average man estimated by actuaries and indicated by them in the mortality tables. The uncontroverted evidence showed that J. L. White was earning as much as $100 per month at the time of his death, and had he lived the average time and the time estimated and given by all of the mortality tables, to wit, 10 years, he would probably have earned as much as $12,000. The verdict of the jury allows plaintiff on this estimate $6.25 per month, or less than one-sixteenth of his earnings. The evidence also shows, without controversy, that plaintiff's husband at the time of his death was receiving from defendant $66 per month; that he was one of the most careful, faithful, and efficient men in his line in the service of defendant. The verdict of the jury only allowed plaintiff one-eleventh of J. L. White's earnings from this source alone, notwithstanding the evidence showed that said White had no children and no parents living which would increase the plaintiff's expenditure from the earnings of her said husband. The evidence, the whole of which is submitted to the court on the hearing of this motion, showed almost beyond question that defendant was liable to plaintiff for the death of her husband, on account of the negligence of its agents and servants, and the jury so found by their verdict." Appellee, by cross-assignment, insists in this court that the cause should be reversed and rendered for appellee, on the ground that the evidence is wholly insufficient to support the judgment under the pleadings. The questions raised by appellant and appellee are of such a nature as to require that we certainly peruse the entire record in this case as a means of making proper disposition thereof, and, having done so, we have reached the conclusion that there is evidence found in the record sufficient to

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

sustain the verdict of the jury, and appellee's cross-assignment will therefore be overruled. We have also reached the conclusion from a careful and painstaking reading of the entire statement of facts that there is no such evidence found therein as required at the hands of the trial court the submission to the jury of the question of discovered peril.

[1] We find no evidence in the statement of facts, even tending, as we view the matter, to show that any employé of the company failed to exercise due and proper care for the safety of deceased, after discovering his perilous position; in fact, the testimony as a whole, we think, shows that he was not discovered in a perilous position by any employé of the company until after the injury had been inflicted, which resulted in his death, and for these reasons appellant's first assignment will be overruled. Supporting our conclusion on this issue we cite the cases of M., K. & T. Ry. Co. of Texas v. Halton, 95 Tex. 112, 65 S. W. 625; San Antonio Traction Co. v. Kelleher, 48 Tex. Civ. App. 421, 107 S. W.· 64; G., H. & S. A. Ry. Co. v. Murray, 99 S. W. 148; Ft. Worth & Denver City Ry. Co. v. Shetter, 58 S. W. 179; T. & P. Ry. Co. v. Staggs (Sup.) 39 S. W. 295; T. & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410.

[2] Under appellant's remaining assignment, contention is made that the verdict of the jury is so small as to raise a presumption that the jury were controlled or influenced improperly. The record shows that J. L. White was 67 years old at the time he received his injuries, was at that time receiving a salary from appellee of $66 or $68 per month, was in good health, and a robust man for his age. It also shows that he owned 320 acres of land, 200 acres of which were in cultivation; that his gross income amounted to about $100 per month. Appellant, however, testified that the land was kept rented out, and her evidence tends to show that the income from that source would likely be as much after the death of the husband as it had been before. In other words, the record tends to show that the pecuniary loss sustained by the wife was such portion of his salary as was not required to support and maintain him, and there is no evidence in the record showing how much of his salary was used in his support and maintenance, though the record does show that he was economical and industrious. While we feel that the verdict rendered by the jury is for a much less sum than we would in all likelihood have rendered had we been sitting as a trial court, yet the law wisely leaves to the discretion of a jury in such cases the amount that should be awarded as damages, and, unless the record in some way shows that the jury had been influenced improperly, we do not feel warranted in disturbing their finding as to amount. There was no testimony introduced on the trial tending to show the life expectancy of J. L. White at the time of his death, and appellant insists in this court that it is our duty to take judicial knowledge of what is shown by the mortality tables, and cites us to the cases of Johnson v. Hudson Ry. Co., 6 Duer (N. Y.) 633; Davis v. Standish, 26 Hun (N. Y.) 608; Gordon v. Tweedy, 74 Ala. 232, 49 Am. Rep. 813; Northeastern Ry. Co. v. Chandler, 84 Ga. 37, 10 S. E. 586; Blair v. Madison Co., 81 Iowa, 313, 46 N. W. 1093; Floyd v. Johnson, 2 Litt. (Ky.) 109, 13 Am. Dec. 255, and section 129, p. 143, Jones on Evidence, Pocket Edition.

[3] Without deciding this question, as we view the record, even if we were to take notice of what the mortality tables show was the life expectancy of J. L. White at the time he received his injuries, we could not also take judicial knowledge of what he would have earned during that period of time. While the verdict is a small one, under the record, as presented to us, we find nothing therein indicating that the jury were influenced by any passion or prejudice or other improper motive, and therefore do not feel warranted in disturbing their verdict.

Because the record fails to disclose any reversible error, the judgment of the trial court will in all things be affirmed.