CHICAGO, R. I. & G. RY. CO. v. LOFTIS et ux. (No. 8249.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 30, 1915.)

1. RAILROADS ⟨⟩398—INJURY TO PERSON ON TRACKS — DISCOVERY OF PERIL BY TRAIN CREW—SUFFICIENCY OF EVIDENCE.
     In an action against a railroad for death of plaintiffs' minor son, struck by defendant's train while walking on the track, evidence *held* to authorize finding that defendant's engine crew discovered the child on the track, unaware of the approaching train, in time to have avoided the death.
     [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. ⟨⟩398.]

3. RAILROADS ⟨⟩390—INJURY TO PERSON ON TRACKS—CONTRIBUTORY NEGLIGENCE—IMMATERIALITY.
     Where defendant railroad's engine crew was guilty of negligence, proximately resulting in the death of one walking along the track, after their discovery of the peril, it was immaterial that such person was guilty of contributory negligence in entering upon the track.
     [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1324, 1325; Dec. Dig. ⟨⟩390.]

3. RAILROADS ⟨⟩400—INJURY TO PERSON ON TRACKS—HIGH RATE OF SPEED OF ENGINE—QUESTION FOR JURY.
     In an action against a railroad for the death of plaintiffs' minor son, struck by locomotive while walking on defendant's tracks, question whether defendant negligently operated its engine at a high rate of speed *held* for the jury under the evidence.
     [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. ⟨⟩400.]

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by W. F. Loftis and wife against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Lassiter, Harrison & Rowland, of Ft. Worth, and McMurray & Gettys, of Decatur, for appellant. R. E. Carswell, of Decatur, and H. E. Lobdell, of Bridgeport, for appellees.

CONNER, C. J. This suit was instituted by W. F. Loftis and May Loftis to recover damages for the death of their minor son, Denny Loftis, who it was alleged had been run over and killed by one of appellant's locomotive engines in August, 1912. On a former appeal judgment in appellees' favor was reversed, on the ground that the evidence was insufficient to warrant the submission of the issues of negligence in operating the engine at an excessive speed and without keeping a proper lookout. See C., R. I. & G. Ry. Co. v. Loftis, 168 S. W. 403. On the last trial the issue on the part of the operatives of the engine to keep a proper lookout was not submitted; the case being submitted on the issues of contributory negligence on the part of deceased, and of negligence on the part of appellant's servants in operating the engine at a dangerous rate of speed, and in failing to exercise due care to avoid injury after discovering that Denny Loftis was in a situation of peril. From a judgment on these issues in apellees' favor, appellant has again appealed.

As submitted to us for revision, only three contentions are made. They are, first, that there was no evidence to warrant the submission to the jury of the issue that the defendant negligently operated the engine at a high rate of speed; second, that the deceased was guilty of contributory negligence; and, third, that there is no evidence to warrant the submission to the jury of the issue of the defendant's negligence after the discovery of the peril of deceased. In the view we have taken of the case, the control-

ling question relates to the issue of discovered peril, and we will therefore address ourselves to it first.

[1] In a general way the evidence shows that appellant's line of railway extends in a southeasterly and northwesterly direction through the town of Bridgeport, in Wise county. Bridgeport is a town of some 2,500 inhabitants, living on either side of the railway, and divided, as designated in the testimony, into East and West Bridgeport. There is a passenger depot about midway of the town, with crossings substantially at right angles with the railway, both north and south of the passenger depot. South of the passenger depot, several hundred feet, is situated a freight depot. From a point a short distance north of the upper or northern crossing, one or more switch tracks leading to the right diverge from the main line. It appears that on the day of the injury the deceased, who was about 13 years old, approached the railway tracks from the east and along the crossing south of the passenger depot. When he arrived upon the main track, the more easterly one, he turned south and continued to walk between the rails until he was overtaken by the engine that ran over him. The operatives of the engine had been engaged in some switching north of the crossing on the north side of the passenger depot, and the engine had been attached to some five or six heavily loaded cars, and was backing south along the main track at a speed of some 10 or 12 miles per hour. The engineer was on the east or right-hand side of the engine, with his face to the north, looking for signals from the conductor, located at a switch stand beyond him. The fireman was on the west or left-hand side of the engine, with his face to the south, looking, as he testified, for objects that might be upon the track.

There was evidence tending to show that, when the backing train reached a point about opposite the northern end of the passenger depot, the fireman saw the deceased approaching the track south of the passenger depot, and when but a few steps from it, with his head down and without apparent knowledge of the train's approach; that a moment later, as the deceased turned down the track, he called to the engineer to blow the whistle, as there was a man on the track; that the engineer, upon the first call, appeared not to understand what the fireman had said, but, on the call being repeated, the engineer immediately blew the whistle, this occurring at a point when the engine was about opposite the center of the passenger depot and from 130 to 200 feet from the point where the deceased was overtaken. The engineer and fireman both testified that immediately upon the blowing of the whistle the engineer reversed his engine and applied the air brakes thereon, with which alone the train was supplied, and did all that could be done in order to avoid the injury. There

was other testimony, however, from witnesses at near-by points, who were alarmed at the situation of the deceased and in a situation to observe, and who testified that they did observe, that there was no diminution or slacking of the train's speed until just before the tender of the engine struck the deceased. There was evidence further tending to show that the engine and train could have been stopped, at the rate of speed it was going, within a distance from 130 to 200 feet, but that it did not in fact stop until after it had gone about that distance after it struck the deceased.

From what the evidence shows that the fireman said and did, the outcries of alarm on the part of some sectionmen along the track just south of where the deceased was struck, and other circumstances, we think the jury were authorized to draw the conclusion that the operatives of appellant's engine discovered that the deceased was on the track, in a perilous situation and without a consciousness of the approaching train, in time in all probability to have avoided the serious consequences which resulted, had they in fact exercised that high degree of care which the law required of them under the circumstances. Sanches v. Railway Co., 88 Tex. 117, 30 S. W. 431; T. & P. Ry. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410. The evidence tends to further show that, when first struck, the deceased was not immediately killed, but either he or some part of his clothing caught upon some of the rods or projections of the tender, and that he was dragged along the track for some time before he finally fell and was run over, and as it seems to us in the interest of the preservation of human life we may lawfully draw the inference, as the jury may have done that, had the operatives of the engine in fact done all that they could have done to have stopped the train immediately upon the discovery of the deceased's peril, the final result would not have been the actual loss of life, though possibly it may have resulted in some injury. See N. T. Traction Co. v. Mullins, 44 Tex. Civ. App. 566, 99 S. W. 433, and cases there cited. On the whole, therefore, we are of the opinion that there was no error on the part of the court in submitting the issue of discovered peril, and that it cannot be said that the evidence is insufficient to sustain the verdict and judgment in appellees' favor on that issue. All assignments, therefore, presenting these questions, are overruled.

[2] The remaining questions, we think, may be briefly disposed of. If the operatives of appellant's locomotive engine were guilty of negligence proximately resulting in the death of Denny Loftis after the discovery of his peril, it is wholly immaterial, as has been often determined, that Denny Loftis was guilty of contributory negligence in entering upon the track. See Sanches v. S. A. & A. P. Ry. Co., 88 Tex. 117, 30 S. W. 431;

M., K. & T. Ry. Co. v. Ferris, 23 Tex. Civ. App. 215, 55 S. W. 1119.

[3] To the remaining contention, raised in several forms by the assignments of error, to wit, "that there was no evidence to warrant the submission to the jury of the issue that the defendant negligently operated the engine at a high rate of speed," we cannot assent. In addition to what we have stated as to the situation of Bridgeport, the number of its inhabitants, the load of the train, the absence of brakes, except upon the engine, the backing of the engine with the tender forward, etc., it was further shown that inhabitants of the town of Bridgeport habitually and frequently walked on and along the track of the railway hereinbefore described, and that the engine at the time was being propelled along a downgrade. In the light of all of these circumstances, we feel unable to say that there was "no evidence to warrant the submission of the issue," and this is the specific objection made.

All assignments, therefore, raising the question, are overruled, and the judgment is affirmed.