**COLLEY et al. v. WATSON CO., Inc., et al.**
**No. 2697.**

Court of Civil Appeals of Texas. El Paso.
July 7, 1932.

Rehearing Denied Sept. 12, 1932.

Austin S. Dodd and Carden, Starling, Carden & Hemphill, all of Dallas, for appellants.

James P. Swift and Leachman, Gardere & Bailey, all of Dallas, for appellees.

WALTHALL, J.

On February 10, 1930, Volk Brothers Company, as owner, and Watson Company, Inc., as builder, had under construction on Elm street, in the city of Dallas, Tex., a six-story concrete and steel building. At the time of the matters involved here, the steel framework of the building had been erected and joined together and some of the concrete designed for the building had been placed on and about the lower stories of the structure, and the work of putting on concrete on other stories and taking down timber forms or frames supporting the concrete as the work progressed was then in progress. A number of workmen, a building superintendent, and other superintendents on the work were then employed on various portions of the building. The time was about 4:30 o'clock in the afternoon. A piece of timber, referred to as a beam and as a timber form, used in supporting the concrete, fell, striking B. C. Colley and injuring him and from which injuries he died shortly thereafter.

Mrs. Zettie Colley, the surviving widow of the deceased, brought this suit in her own behalf, and for the use and benefit of the three minor children of herself and her deceased husband, and for the use and benefit of Mrs. Maggie Colley, a widow, the mother of the deceased, the sole beneficiaries of the deceased. The suit is brought against Volk Brothers Company, a corporation, as owner of the building then under construction, and Watson Company, Inc., as builder, to recover damages, alleging in substance that the deceased, B. C. Colley, met his death by reason of the negligent acts assigned, proximately causing and contributing to cause his death.

Plaintiff alleges that her said deceased husband was a laborer by occupation, and that being temporarily out of employment he went to where said building was being erected for the purpose of securing employment on said building, and that while he was in front of said building and at a place where it was usual and customary for persons desiring employment to be, and where it was usual and customary for the representatives of defendants to receive, consult, and employ persons seeking employment for work, said timber, by reason of the negligent acts stated, fell and killed deceased. Without stating them at length, the negligence assigned, and upon which evidence was offered, are reflected by the special issues submitted on the trial. 'Each of the defendants answered with pleas of general denial, contributory negligence, unavoidable accident, and that deceased was a trespasser upon the premises in question when injured. From the disposition we make of the case we think we need not state the separate and additional pleading of defendants.

The issues were severally submitted upon a preponderance of the evidence. The jury found: The timber which fell and struck the deceased (Colley) on the occasion in question was pried loose from the concrete beam by some one or more workmen on the building, causing said timber to fall at the time it did, was negligence, and was a proximate cause of the death of deceased; the workmen engaged in removing the wooden timber which fell and struck the deceased failed to keep a lookout for the safety of the deceased, and such failure was negligence, and a proximate cause of the death of the deceased; the workmen engaged in removing the wooden timber which fell and struck deceased failed to warn deceased before same was caused to fall, and such failure was negligence and a proximate cause of the death of the deceased; the injury to the deceased was not the result of an unavoidable accident; soon after the deceased entered the gate at the place and on the occasion in question, he was directed by W. C. Cooper (watchman, keeping people from coming in the inclosure) to go outside the gate and wait until after working hours to apply for work; the deceased, on the occasion in question, failed to exercise ordinary care in respect to keeping a lookout for his own safety, and such failure proximately caused or proximately contributed to cause his death; the deceased did not fail to exercise ordinary care to keep a lookout for falling timbers at the time and place in question; the deceased was injured while inside the Volk building; the deceased by going into said building on the occasion in question failed to exercise ordinary care for his own safety, and such failure proximately caused or proximately contributed to cause his death; the deceased, on the occasion in question, entered the Volk building without knowing the nature, state, or progress of the work

then being done in said building, and such entry into said building was negligence on the part of the deceased and proximately caused or proximately contributed to cause his death; the failure of the deceased to leave said premises prior to the time he was injured was negligence, and such negligence proximately contributed to cause his death.

The jury found and stated the sum of money that would reasonably compensate the plaintiff Mrs. Zettie Colley, and each of her three minor children, individually, for the present value of the pecuniary aid each would have individually received from deceased had he not been killed during the minority of each child, and found "nothing" as to the mother of deceased.

The court entered judgment that plaintiff, suing for herself and others, take nothing by their suit and that each of defendants go hence without day and recover their costs, from which judgment plaintiffs prosecute this appeal.

### Opinion.

The trial court did not submit to the jury the issue of discovered peril. By their first several propositions appellants submit that the twelfth paragraph of their petition sufficiently tendered the issue of discovered peril, and that the evidence called for and necessitated the submission of such issue to the jury, and plaintiffs submitted to the court several special charges presenting to the jury the issue of discovered peril, which special charges the court refused to give, and such refusal is submitted as error.

Appellants rely upon and refer to the evidence of J. O. Sanderson, a plumber's helper, W. C. Cooper, an employee, and R. C. Smith, the superintendent, all employees on the building at the time in question, as sustaining their proposition on discovered peril. Much of their evidence is not pertinent to the point now under consideration and we state such as seems to bear upon the point.

Superintendent Smith stated at length the progress made in the work on the building, the location in the building of the timber that fell and killed Colley, the place he was standing at the time the timber fell, and what he was doing at the time. He said: He saw the accident; he was directly in front of the building; did not see the beam when it began to fall; first saw it when his attention was called to it when the men (on the scaffold above) were hollering and the form (beam) was about halfway down between the beam and sidewalk. First saw Colley about the premises when he (witness) was standing in front of the building, and witness was talking to one of the men hoisting material; saw Colley standing near the gate (entrance to the building) two or three minutes before he was struck; Colley "was just by the gate, just inside the gate. They (the workmen on the scaffold above) hollered 'watch out below,' two or three of them hollering." It wasn't but two or three seconds after that when he saw the beam side-falling; witness could see the workmen on the scaffold from where he was standing. In a deposition of witness Smith, he said, in substance: "This occurrence happened about 4:30 in the afternoon. With reference to the sidewalk—well, lets see, 16—I'd say it happened with reference to the sidewalk about 16 feet in from the outside of the sidewalk, about 16 feet from the face of the curb. That would be about 6 feet inside the building, I think the curb, the sidewalk is 16 feet there. The beam side came down pretty level, it just seemed to come down clear, nothing there to hinder it from coming down, no scaffolding or anything, because the scaffolding was all outside the building, you see, no scaffolding on the inside at all; no, I couldn't say for sure whether the man in front of Colley was Sanderson or not." Then continuing on the trial witness said: He had never seen Colley before; stated the location of the office to be over the sidewalk, and its purpose. Said: "To get employment they would see me in the office or on the job out at the gate. Yes, sir, I frequently employed helpers as I needed them. No, sir, not any of them entered the building to hunt me up to find work, there was nobody allowed in the building. They would find me at the gate or in the office. We had steps going up to the office directly at the gate."

The witness Cooper testified: Was working on the job; was watching, keeping people there from coming in; Colley got hurt there; first saw him when he pushed the gate open and walked in. He opened the gate himself, the west gate. Witness was about 25 feet above the gate on the inside. Didn't know Colley at that time. When he came in the gate witness met him, asked him what he wanted; said he wanted to see the foreman to get a job; witness told him he could not see the foreman until after work hours; that he would have to go outside and catch the foreman when he came out. Witness told Colley he would have to go outside, that he was not allowed on the inside, and to get on the outside and stay there until after work hours. After witness told Colley the second time that he would have to get out, Colley went to the gate to go out. Witness went with Colley to the gate and had the gate open. Colley said something about the plumber's helper coming down the ladder. Witness told Colley he would have to get on the outside and stay there until after work hours. Colley had the gate pulled open to go out when somebody called witness and he went to the back of the building. In doing so witness turned and left Colley and went to the inside of the building. When witness left Colley, he (Colley) was standing in the gate pulling

the gate to—going out. Witness went on to the back part of the building. Said: "The next time I saw Mr. Colley was when I got to the back end, I heard somebody holler 'look-out,' and I went to the front and somebody was getting him out from under the beam." He was about 8 or 10 feet on the inside of the building. Witness did not see the beam fall that struck Colley. The timber that struck Colley came from inside the beam; witness had seen it often before it fell; had just passed under it and went on to the back and never paid any attention to the beam.

Witness Sanderson testified: Was working on the Volk Brothers building for Harry Kahn Plumbing Company, helping the plumber; saw Colley as witness was fixing to go off work; Colley was near the gate, coming in the gate; the gate was open about 2 feet or better; witness was coming down the ladder on the tower. Witness and Colley stopped and talked about Colley getting a job, just a minute, right at the foot of the tower where you climb down off the tower. Witness turned from Colley and started to go to the basement south from where they were. Witness was in a hurry in order to go to basement and change his clothes. Did not notice which way Colley went. Witness said: "After I turned to go to the basement this guy—this edge of the beam entered the first edge of the beam—this lumber was falling. From the ground I heard somebody holler 'lookout' from above, to keep something from falling on me. I turned after I heard the noise above to lookout as quick as I could as I had time to get out of the way and I could see Mr. Colley was pinned under the 2x10. I don't know just how long it was, 12 or 15 feet long. These pieces of timber were meant for forms, I reckon, to hold the concrete in. These timbers was nailed together by strips close together. * * * When I stopped—well, I will say, 15 feet on the inside of the building when I stopped. When I saw him after I turned around Mr. Colley was pinned under these two by tens. They were on the inside of the building. I judge three or four feet, I didn't measure it. They were laying east and west. Yes, there were three negroes up above where this timber fell from—three negroes on the scaffold up above. They were standing on the scaffold, I judge, ten or fifteen feet looking down. I saw them first after this accident had happened. * * *" On cross-examination witness said: "I must have gone in the building when I heard some one holler 'lookout.' I couldn't say exactly how far I was inside or outside of the building; anyhow when I heard them holler 'lookout' I ran. No, sir, I was not still standing talking to Mr. Colley when I heard that. I will say I had taken four or five steps away from Mr. Colley when I heard them holler 'lookout,' maybe a little further. I don't know just how far. * * * He went due south from where I talked to him, due south back into the building, well, yes, away from the office back in the inside of the building. * * * The last time I saw Mr. Colley he was standing on the sidewalk there. I will say 15 feet from the point where I saw him after this beam had hit him. Yes, he had traveled some 15 feet south from that point. * * * I didn't see anybody up there (on the scaffold) working. They was looking down after this accident happened, looking down at us. No, sir, I didn't know what they were doing before it happened."

The evidence, we think, shows beyond any controversy, and there is no evidence to the contrary, that a few minutes before the accident causing his death Colley had been requested by the watchman, Cooper, to leave the building and not to re-enter until after working hours, and that he did leave the building as requested but remained on the outside, at the gate; that when Sanderson came down the ladder from his work on his way to the basement and entered the building through the gate, Colley, without any invitation or permission to do so, or without any knowledge of any employee on the building that he would do so, suddenly re-entered the building through the gate, and was killed within a few seconds after he re-entered by the timbers falling on him from overhead; that Superintendent Smith was on the outside of the building, near the gate, was observing the hoisting of some timbers, was in view of the workmen removing the forms from the concrete column, had seen Colley standing on the outside of the building, did not see him go in the building or come out or go in following Sanderson, and, so far as the evidence shows, did not know that Colley wanted to see him, or that Colley had been in the building or had any intention of entering the building at any time for any purpose. There is no evidence that any employee saw Colley enter the building at the time he was injured, or that he had any intention of doing so. The timber that injured Colley fell on the inside of the building, and just as it was falling Colley walked inside the building and under the falling timber. He was not in peril from the falling timber while on the outside of the building. Smith did not know that the timber would fall until he heard the warning "lookout," and at that time he did not see Colley, and had he seen him he had no means of preventing the timber from falling or of avoiding or preventing the accident.

█ Appellee alleged that Colley was a trespasser, and that he was negligent in going into the building, and the jury found both issues in appellee's favor. Such issues and findings, however, are not perfect defenses to discovered peril, and we do not understand appellees as so contending. The doctrine of

discovered peril is a qualification of the general rule that the contributory negligence of the person injured ordinarily bars a recovery. Corpus Juris, vol. 18, p. 1053, and notes. To the same effect is Texas & Pacific Ry. Co. v. Breadow, 90 Tex. 26, 36 S. W. 410.

■ To justify the submission to the jury of the issue of discovered peril, the evidence should show the facts, either directly or inferentially, which constitute discovered peril. There is no controversy in the evidence on the facts. There is no evidence that Superintendent Smith, or any employee, actually knew of Colley's peril in time to have avoided injuring him. Such knowledge is essential to impose upon appellees the duty of using means to avoid injuring him. Texas & Pac. R. Co. v. Breadow, supra; Texas & Pac. Ry. Co. v. Staggs, 90 Tex. 458, 39 S. W. 295, 296.

In each case the court says: "The principle, however [the duty to exercise ordinary care to avoid injuring another], has no application, in the absence of actual knowledge on the part of the person inflicting the injury of the peril of the party injured in time to avoid the injury by the use of the means and agencies then at hand. If he had no such knowledge, the new duty was not imposed, though it be clear that by the exercise of reasonable care he might have acquired the same. The burden of proof was upon plaintiff in this case, in order to recover for a breach of such new duty, to establish, not that the employees might, in the exercise of reasonable care, have acquired such knowledge, but that they actually possessed it."

■ The cases have often been referred to. We think the principle announced in the above cases have application and control in this case. The court was not in error in not submitting discovered peril.

Propositions 5, 6, 7, and 8, complaining on several grounds of the submission of issue 12, are without merit. If Colley was not an employee on the building and had no business in the building, Cooper, the watchman, had the right, as representative of appellees, to have him leave the building.

Propositions 9 and 10 complain of the refusal of the court to submit appellant's special charge 14 in connection with the court's charge 12.

In response to issue 12, the jury found that Watchman Cooper directed Colley to go outside the gate and wait until after working hours. Colley went outside the gate. Requested charge 14 would submit to the jury to find whether soon after Colley came inside the gate Smith had actual knowledge of the presence of Colley within the inclosure and that Colley thereafter remained there with the knowledge and without objection on the part of Smith.

■ We think no error is shown in refusing the charge. The evidence, as we view it, would not justify the charge; nor would the deductions appellant draws from such facts, had the jury so found, follow.

Appellant submits several propositions to the effect that the evidence called for a submission of the question whether Superintendent Smith was negligent in not warning Colley of the danger of going into the building at the time he was injured and killed by the falling timber. We have carefully reviewed the evidence and have stated much of the evidence, and the facts, we think, are uncontroverted. Colley had been requested by the watchman to go outside the building and to stay outside immediately before he was injured, and he had done so until he followed Sanderson inside. The evidence does not show that Smith knew or had any intimation that Colley intended to go back in the building. The evidence does not show that Smith knew that Colley had been in the building. He was on the outside and at the gate when Smith saw him. Nor does the evidence show that Smith knew that the timber that hurt Colley would fall until he heard some workmen call to "lookout," or that Colley was then or would be in any danger from where Smith had seen him. Colley had then re-entered the building immediately following Sanderson. The evidence does not show that any workman had placed Colley at the gate, as appellant states; but if it could be so inferred, he was in safety there had he so remained.

Several of appellants' propositions assume facts not supported by the evidence, and upon which appellants submitted charges on evidentiary facts. They have been considered and are overruled.

We have carefully studied the record in this case and have concluded that no reversible error is made to appear.

The case is affirmed.