## TEXAS & PACIFIC RAILWAY COMPANY v. C. C. SHIVERS.

### Decided December 7, 1907.

**1.—Railroads—Pedestrian—Failure to Look and Listen—Contributory Negligence.**

Whether or not it is negligence to fail to look and listen for approaching trains when about to cross a railroad track, is ordinarily a question of fact to be determined by a jury; but where the injured party himself testifies and offers no excuse whatever for his failure to take this or any other precaution for his own safety before going into a place of known danger, no other conclusion but that of negligence can be entertained.

**2.—Same—Case Stated.**

Plaintiff, while walking in defendant's railroad yard along the main track, stepped across a sidetrack to be further away from a train passing on the main track; after said train passed and without taking any precautions to ascertain if a train was approaching from behind him, plaintiff attempted to cross back over the sidetrack when he was struck by a train which came up from the rear. Held, the plaintiff was guilty of such contributory negligence as to require a peremptory instruction for the defendant. Even though plaintiff was a licensee in the yards he would be required to exercise ordinary care for his own safety.

**3.—Same—Same—Lookout when Unnecessary.**

Where in a suit for personal injuries the evidence showed that plaintiff was injured by suddenly stepping in front of a passing train and that no degree of care in keeping a lookout for persons on the track would have prevented the injury, it was error for the court to charge the jury that it was the duty of defendant to maintain a lookout to discover persons on its track and to avoid injuring them.

Appeal from the District Court of Van Zandt County. Tried below before Hon. R. W. Simpson.

*W. L. Hall, H. M. Cate* and *J. A. Germany,* for appellant.—The court erred in refusing to charge the jury to return a verdict for defendant. Gulf, C. & S. F. Ry. v. Matthews, 99 Texas, 160; Houston & T. C. Ry. v. Ramsey, 43 Texas Civ. App., 603.

*Nat M. Crawford* and *Wynne & Collins,* for appellee.—The court did not err in refusing to direct a verdict for appellant. St. Louis & Texas Ry. Co. v. H. C. Crosnoe, 72 Texas, 79; Gulf, C. & S. F. Ry. Co. v. Matthews, 99 Texas, 160; Texas & P. Ry. Co. v. Watkins, 88 Texas, 20.

SPEER, ASSOCIATE JUSTICE.—Appellee recovered a judgment against appellant for personal injuries received by him under the cir-

cumstances hereinafter shown, from which judgment this appeal is prosecuted.

The first assignment presented challenges the ruling of the court in refusing to give a peremptory instruction to find for appellant. The contention is that the appellee's evidence shows such contributory negligence on his part as would require the giving of such instruction. The appellee thus describes the accident and the circumstances leading up to it:

"I got on the railroad at the crossing of the Fielder Salt Works, and as soon as I got on the road I looked up west and saw a train up there. I always look to see if there is a train coming. The train was coming east. I then stepped across the two switch lines and got between the middle switch line and the main line, and walked on down until the engine got pretty close to me, and I was afraid that something might happen; very often large lumps of coal fall off, and I was afraid something of that sort might happen and knock me down, and I just stepped back across this middle switch line and walked on down between the switch lines until the caboose of this train passed. I was not thinking of anything behind me—didn't know there was anything coming, and for the roaring of the train I could not hear anything—and just as the caboose of this train passed me I started to step across this track again to get over between the main line and the switch line, where it was smoother walking, and as I stepped up on the end of a cross-tie, and just as I stepped up on and straightened myself, something struck me and I was down that quick; I did not see it; I do not know whether I shut my eyes when it hit me, or what; it struck me and whirled my back to it, and I fell with my back right at the ends of the cross-ties; I did not know what had hit me at all; I did not hear anything of any caboose there—didn't hear a thing but the roaring of this train as it went on by; I knew nothing of the caboose until I was hit; I heard no signal given; I did not hear a thing until I was down; I did not know what had struck me—didn't even get a glimpse of it; after it had passed I crawled up on my feet, and this man Crump was in eight or ten feet of me, and I asked him what it was knocked me down there. . . . I was going northeast, back across the switch track, when I was struck; this train had just got by me when I was struck; I suppose it had passed me ten or fifteen steps; just as soon as it passed me I started back across the track and was struck. . . . If I had walked down between the main line and the middle switch there was room enough for the train to pass without the train striking me; I just crossed over the middle switch for fear something might happen. . . . When I got on the south side of the middle switch there was plenty of room for me to pass along there without any train hitting me; if I had stayed over there between the middle switch and the south switch the caboose would not have hit me; if I had known it was coming it would not have hit me, anyhow; if I had known it was coming, and had walked along over there, it would not have hit me, but it was rough walking, and I wanted to get where it was smooth walking. . . . I never looked back to see if there was any train coming on that track; when I first

got on the railroad I looked up west and didn't see anything; after I got up I looked towards the depot; I did not see the dodger engine and caboose until they got away down there where they stopped; when I crossed over the middle track going south I did not see them at all; I did not know they were up there; as to whether I would have seen the caboose if it had been standing in there on the switch, I don't suppose it was there at all; I could just see the train; it is considerable over a quarter of a mile from where I got on the railroad up to the switch, and I don't know whether this train had got to the switch or not when I saw it coming down the main line; I just saw the train coming, and then I never looked back any more."

The evidence shows that the caboose which knocked appellee down had been shoved or kicked down the track by what the witnesses called a "dodger" engine, and that it was going at a rapid rate of speed when it struck appellee, and the evidence further shows that the place where the accident occurred was one which the public generally had been using for a footway for a great number of years, under such circumstances as to warrant the finding that the company had assented thereto, and that appellee was therefore a licensee, though upon this last issue the evidence, as we view it, was not conclusive, since appellant had its right-of-way fenced at this point and the crossings suitably protected by cattle guards.

Under these circumstances we can not avoid the conclusion that appellee's own evidence showed him to be guilty of contributory negligence, and that the trial court should have instructed a verdict for the appellant. We understand that ordinarily contributory negligence, even when such negligence consists in a failure to look and listen for approaching cars in attempting to cross a railroad track, is a question of fact to be determined by a jury, but where, as here, the injured party himself testifies, and offers no excuse whatever for his failure to take this or any other precaution for his own safety before going into a place of known danger, no other conclusion but that of negligence can be entertained. Appellee was not caused to take the step he did relying upon the assumption that appellant would give him timely warning, for the accident did not happen at a crossing or other place where signals were required to be given; nor can he insist that the employes of the company should have kept a lookout for him, since a lookout, if kept, would have been of no avail in this case, in that he was not run down while walking on the track, but was injured solely because he stepped immediately in front of a moving car without so much as lifting his eyes to see if there was any danger to him. A proper lookout, if one had been maintained, could have resulted only in finding appellee off the track and in a place of perfect safety until, under all the evidence, he stepped in front of the car, when it was too late to avoid injuring him.

The trial court instructed the jury that it was the duty of appellant to maintain a lookout to discover persons on its track, and to avoid injuring them, and for this we would remand the case were the error not swallowed up in the greater error of refusing the summary instruction. As before stated, the matter of keeping a lookout to discover appellee was foreign to any issue in the case, and the company's fail-

ure in this respect could not, under the facts, have caused the injury. We therefore hold that the undisputed facts, as detailed by appellee himself, show that he was guilty of contributory negligence, which would bar a recovery herein. Sanches v. San Antonio & A. P. Ry., 88 Texas, 117; Ft. Worth & Denver City Ry. Co. v. Wyatt, 35 Texas Civ. App., 119, and authorities there cited. It can make no difference, so far as the issue of contributory negligence is concerned, whether appellee was a trespasser or a licensee. His relations to appellant might affect the measure of the latter's duty toward him, but it could hardly relieve him of the duty of exercising ordinary care for his own safety.

The judgment of the District Court is reversed and judgment here rendered for appellant.

*Reversed and rendered.*