## HOUSTON & T. C. R. CO. v. TIDWELL.
### (No. 7134.)

(Court of Civil Appeals of Texas. San Antonio. April 9, 1924. Rehearing Denied May 7, 1924.)

1. Railroads ⊚⊐398(4)—Driver attempting to save horse held negligent.

Evidence held to show that plaintiff knew a train was approaching and, knowing this, went on track to get his horse and wagon away from the track, and hence was guilty of contributory negligence.

2. Railroads ⊚⊐355(1)—Use of tracks as passageway held not to justify presence thereon to save horse.

That railway tracks were used as a passageway for pedestrians did not justify plaintiff's presence thereon to save his horse which had wandered thereon, he not being a licensee, but a trespasser.

3. Railroads ⊚⊐397(7)—Use of tracks by pedestrians evidence of duty to keep lookout.

Where pedestrian was struck by train while attempting to get his horse off the track, evidence of the use of track by pedestrians at that point was proper to show railroad's duty to keep a lookout, not only for pedestrians, but horses and wagons that might be discovered.

4. Railroads ⊚⊐387—Negligence of injured person defense.

Neither an injured party nor his representative, if his death ensues, can recover, if he

negligently goes upon a railroad track in front of an approaching train and his presence thereon is not actually discovered by those in charge of train.

5. Railroads ⊚⊐359(1)—Care required as to trespasser.

A railroad owes no duty to a trespasser except to use all practicable means to protect him from injury after discovering him.

6. Railroads ⊚⊐390 — Negligent injury after discovery of peril actionable.

A breach of railroad's duty to keep a lookout for those upon track does not render it liable in face of contributory negligence of a pedestrian, unless his peril is discovered in time to avoid injuring him.

7. Railroads ⊚⊐389(1)—Leaving horse untied held not proximate cause of injuries to driver by train.

Where plaintiff was injured while attempting to lead his horse off track in front of an approaching train, leaving the horse untied, which permitted it to wander on the tracks, was not a proximate cause of the accident.

Appeal from District Court, Tarrant County; Ben. M. Terrell, Judge.

Action by E. L. Tidwell against the Houston & Texas Central Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Baker, Botts, Parker & Garwood, of Houston, and F. B. Walker and Thompson, Barwise, Wharton & Hiner, all of Fort Worth, for appellant.

Jones, Sexton, Buck & Jones and Barrett Gibson, all of Fort Worth, for appellee.

FLY, C. J. This is a suit for damages based on the negligence of appellant in inflicting personal injuries upon the appellee, by running a locomotive attached to a train against him, while he was upon the track of appellant, within the corporate limits of the city of Fort Worth. The grounds of negligence were that no lookout was kept for persons on the track, where it had been used as a passageway by many persons, with the knowledge and acquiescence of appellant; that no whistle was sounded or bell rung to notify appellee of the approach of the train, although required by ordinance to ring bells whenever trains are in motion within the corporate limits; that the train was moving at an illegal rate of speed; that the peril of appellee was discovered by the employees of appellant in time to have stopped the train and prevented the accident. Appellant pleaded contributory negligence, in numerous forms and phases. The cause was submitted to the jury on 45 special issues, and upon the responses thereto judgment was rendered in favor of appellee for $20,000.

In answer to issues the jury found that the track where appellee was injured had been

used, with the knowledge, consent, and acquiescence of appellant, by pedestrians, to such an extent that a person in the exercise of ordinary care would have anticipated that persons would be on the track; that no whistle was blown or bell rung as the train approached appellee; that the failure to ring the bell or blow the whistle was negligence and was a proximate cause of the accident; that the train was moving at the rate of 15 miles an hour, and such speed was not negligence; that appellee, when he left the warehouse to look for his horse, attached to his wagon, that had been standing near the warehouse and had left, did not see the train approaching; that the employees on the train kept no lookout to discover persons on the track at or near where appellee was struck, and such failure was negligence which was a proximate cause of appellee's injury. The jury also found that appellee was not guilty of contributory negligence, that appellant did not discover the peril of appellee, and that he was damaged in the sum of $20,000.

The testimony of appellee was that he, on the day he was injured, went to a warehouse on a siding of the railroad to deliver some sacks to the warehouseman and left his horse attached to a wagon, untied, near the warehouse. When he came out the horse and wagon were gone, and seeing the horse going to the west towards the main line of the railroad, he followed him. He stated that when he left the warehouse he looked to the north and saw a train of box cars beyond Magnolia street, over 500 or 600 feet distant, headed towards the south, and towards that part of the track that he was approaching. The last street to be passed in going south to the place where appellee was hurt is East Magnolia avenue. Appellee, in going to the warehouse, drove across the railroad to Magnolia avenue, then turned to the east on a road running along the railroad in a southerly direction, then he turned to the east and went to the warehouse on a siding, and unloaded the sacks from his wagon. After unloading the sacks, appellee noticed that the horse which had not been tied had wandered off towards the main track, and appellee started after him. He caught the horse just as his front feet got on or near the main track and he tried to get him off the track but could not. While so engaged, he was struck by the train from his rear. He stated that after he started for his horse he saw an engine and some box cars beyond and north of Magnolia avenue. The engine was headed towards appellee. Appellee swore that he did not hear a train, and did not know that it was approaching. Appellee swore that after seeing the train, or switch engine, he did not know which, he never looked along the track again, and when asked if, after he first saw the train, if he ever did look for the train again, replied: "No sir, I was after my horse."

The man Threatt, to whom the sacks were sold by appellee, stated that while they were in the office figuring on the price of the bags, "the train came pulling out that way," and appellee got up when the train was in sight, down about the Magnolia street crossing, and went out to see about his horse, and as he went out the door he said, "Whoa," and "I followed him." He stated:

"Just about the time I got out there, I saw the engine hit Mr. Tidwell. I think it was the cylinder head on the engine which hit him. Mr. Tidwell was between the engine and the horse, and the horse was running down the track."

Appellee stated that when he reached the horse he was on the east side of the track, but it seemed that "his front feet had gotten about up on the track, just about on the track." He said he had got on the west side of the horse, that is, on the main track side, and was "slapping at" him, trying to get him away from the track. He said, when asked if he did not know the train was coming:

"No, sir; I wasn't watching the train. I was watching, trying to get my horse away from there."

He admitted that he was trying to slap the horse off the track.

[1] All the evidence leads to the inevitable conclusion that appellee knew that the train was coming south on the main line of the railway, and knowing this he endeavored to get his horse and wagon away from the track. Upon no other reasonable hypothesis can the actions of appellee be understood and reconciled with any reason whatever. What could have caused him to leave the collection of the debt due him, just as he was about to collect it, to overtake and recapture a horse that was leaving the place where he had left him, if it were not fear for the safety of the animal? And what could have aroused this fear if he had not known that a train was bearing down upon the spot on the main line towards which the horse was going? And, although he swore that he was not excited, he entered upon the track, as some of his witnesses state, at a run, and feverishly and excitedly endeavored to get the horse away from the track. He made this endeavor by placing himself between the horse and the approaching train. The train consisted of a locomotive and 27 freight cars, which was moving up a grade. No train under such circumstances could move noiselessly and silently over the track. To indulge in such a surmise would be to reason in the face of nature and nature's laws. If, however, his version of the situation be true, and his actions be taken as founded on truth, we are confronted with his own admission that he went deliberately upon the main line of a busy railway system, knowing that a train was on that track pointed towards

him, in an open locality with nothing to obstruct his view, and where for many hundreds of feet he could have seen a train, if he could not hear it, and yet he did not look down the track towards the train, but went on it and entered into a struggle with his horse to induce him to leave the track. No excuse was offered or suggested for this inexcusable conduct except that—

"I wasn't watching the train; I was watching, trying to get my horse away from there."

. All of his actions lead inevitably to but one conclusion, and that is that he thought his horse was in danger, and he rushed into the danger to rescue him. There could have been no other danger than that arising from a moving train, and he had seen that moving train just beyond Magnolia avenue. Appellee admitted that he came out to look at his horse, and Threatt swore that he left the office because he saw the train approaching and that he announced that he was going to see about his horse. Whether he did or not, he saw the train and started after his horse, and in a very short time, only sufficient to traverse 35 or 40 feet, he was on the track slapping at the horse, and was almost immediately struck by the engine. The train with box cars could not have been noiseless; experience refutes any such assumption, and appellee's action can only be accounted for upon the presumption that he imagined he could save the horse before the train reached him. All the testimony tends to show that it was only an instant after he got on the track that he was struck, and it must have been for that reason that the jury found that his peril was not discovered by the employees of appellant. At least, the jury disposed of the issue in the negative as to the employees seeing appellee. It may have been that they did not see him because they were not keeping a lookout, as they should have been keeping when running through the streets of a city.

[2, 3] The evidence as to the railway track being used as a passageway for pedestrians, at the point where appellee was injured, did not justify the presence of appellee. He was not using it for purposes of a passageway, but merely to save his horse, just as he might have used the track at any other point. He was not a licensee under the circumstances, but a trespasser. Railway v. Cowles, 29 Tex. Civ. App. 156, 67 S. W. 1078. While this is true, still the evidence of use of the track by pedestrians was proper testimony to show that a peculiar duty rested upon appellant to keep such lookout as that not only pedestrians but horses and wagons would be discovered.

The jury found that appellee was not guilty of contributory negligence, but that finding is palpably and clearly in the face of the overwhelming facts. His own evidence, that of Threatt, that of the witnesses on the viaduct, that, in fact, of all who witnessed the accident, lead to the inevitable conclusion that by the least care and circumspection appellee could have avoided the accident. He wagered his own safety against the safety of his property and lost.

It is remarkable, to say the least of it, that all of the witnesses who were in proximity to the accident testified to the fact that the train was bearing down upon the spot where appellee was injured at the time he got there. One man ascertained the presence of the train by the fact that he was compelled to desist from a conversation over the telephone because voices were drowned by the noise of the train; Threatt knew of its presence by seeing it through the office window, and by the hurried departure of appellee, who left to see about his horse; and the women and others on the viaduct knew of its approach by seeing it coming rapidly towards the place where appellee went on the track. Appellee saw it, but claims he did not know it was coming down towards him, and never at any time heard any noise of the train. He, of all persons present, who should have known of the approach of the train, did not look to see if it was coming, and did not listen for any noise it might make in its approach. He alone, of all who were near, did not know of the presence of the train until it struck him. And yet he swore that he was not running and was not excited, and he claimed no defect of sight or hearing. The only reasonable conclusion from all the facts is that he did know that the train was moving toward his horse, and he took the chance of being injured himself, in order to save the horse. As stated by appellee, there was no danger at the very instant that he stepped on the track; but it came swiftly, and if he had used the least precaution he would have known of its approach.

[4] The evidence justified the finding that appellant's employees on the train did not discover appellee upon the track. The fireman was engaged in a duty about the locomotive which prevented him from seeing the man and horse and wagon, and the engineer being on the opposite side of the track from appellee, his vision was obscured by the locomotive. Thus we have presented a case of a man negligently going upon a railway track in front of an approaching train and his presence on the track not actually discovered by those in charge of the train, and under such circumstances the courts of Texas have time and again enunciated the rule, that the injured party could not recover, or if death ensued his representatives could not recover. Railway v. Sympkins, 54 Tex. 618, 38 Am. Rep. 632; Railway v. Ryon, 70 Tex. 59, 7 S. W. 687; Railway v. Watkins, 88 Tex. 24, 29 S. W. 232; Railway v. Breadow, 90 Tex. 31, 36 S. W. 410; Railway v. Staggs, 90 Tex. 461, 39 S. W. 295; Railway v. Malone, 102 Tex. 273, 115 S. W. 1158; Morgan v. Rail-

way, 108 Tex. 334, 193 S. W. 134; Railway v. Watts, 110 Tex. 106, 216 S. W. 391.

[5, 6] The proximate cause of the injury to appellee was his presence on the track, and his presence there being under circumstances which clearly made him a trespasser, the railroad company owed him no duty except, if discovered, to use all practicable means to protect him from injury. He was not using the track as a licensed pedestrian, but had entered upon it at an unusual place for a purpose totally inconsistent with that of passage along the track. As said in the Maryland case of Railway v. Kehoe, 83 Md. 434, 35 Atl. 90:

"His right was a right of transit along the highway and across the tracks, and to that extent the duty of the company to use due care not to abridge or invade that right was imperative, and carried with it the obligation to exercise that degree of diligence which might be necessary to avoid an injury to him while he was in the lawful enjoyment or pursuit of that right. This obligation of the company did not go further, or require the company to anticipate, either, that the plaintiff would be guilty of negligence in using the highway, or that he would use it, or attempt to use it, for a purpose not within the limits of his admitted right."

Appellee, as a member of the general public, had the limited right to use the track as a passway by walking up or down it, but that right went no further, and whenever he used it for a different purpose he at once became a trespasser, and that would preclude him from a recovery unless appellant discovered him in such unlawful use of the track, and then failed to use all means practicable and consistent with the safety of those on the train, to prevent injury to him. The duty devolved upon appellant to keep a lookout for those upon the track, but negligence in the failure to keep an outlook would not render appellant liable in the face of the contributory negligence of appellee, unless his peril was discovered in time to have averted the injury. Wilson v. Traction Co., 111 Tex. 361, 234 S. W. 663.

The case of Railway v. Breadow, 90 Tex. 26, 36 S. W. 410, is an important one on the point involved in this suit, and has often been approved by the Supreme Court. In that case, after discussing discovered peril, the court held:

"The principle, however, has no application in the absence of actual knowledge, on the part of the person inflicting the injury, of the peril of the party injured, in time to avoid the injury by the use of the means and agencies then at hand. If he had no such knowledge the new duty was not imposed, though it be clear that by the exercise of reasonable care he might have acquired same. The burden of proof was upon plaintiff in this case, in order to recover for a breach of such new duty, to establish, not that the employees might by the exercise of reasonable care have acquired such knowledge, but that they actually possessed it."

That seems to be fixed as the law of Texas, for it was repeated vigorously in the Staggs Case, herein cited, in the same volume, and from that time on to the Watts Case, in 110 Texas Reports, herein cited. In that case the matter is dismissed with the ruling:

"The law which makes contributory negligence available as a defense in an action for an injury sustained through failure on the part of railway employees, in operating an engine or cars, to exercise ordinary care to discover the person injured and to avoid the infliction of injury, is too well settled in this state to warrant us in departing therefrom."

The same doctrine is reiterated in Wilson v. Traction Co., herein cited.

In the case of Higginbotham v. Railway (Tex. Civ. App.) 155 S. W. 1025, the facts were similar in some respects to the facts in this case. Higginbotham saw his horses on a railway track and saw a train approaching, but attempted to save the horses, and while so engaged was struck by the train. He was fighting his horses with his hands and had been on the track a minute and a half or two minutes when struck. After discussing the question of discovered peril, which the facts presented, the court said:

"We think that the deceased in remaining upon the track in front of the approaching train was negligent as a matter of law, and plaintiffs cannot recover unless the jury should find from the evidence that the operatives of the train saw the deceased and realized his peril in time to have avoided striking him by the use of proper care and failed to use such care."

The judgment was reversed because the jury was not permitted to pass upon discovered peril.

Appellee was not at a crossing, but went upon the track at a place where he had no right to go to struggle with a horse, at a point where there was no evidence that any one ever entered upon the track. Railway v. Cowles, herein cited. It has often been held in Texas that at a crossing it is not negligence per se for any one desiring to cross to not stop, look, and listen. Such doctrine cannot be extended and made to include any point on a railroad track, whether used as a crossing or not. As said in Railway v. Ryon, herein cited:

"It is a fact widely known that prudent persons, as occasion may require, cross railroad tracks at places other than public crossings, and the mere fact that one may cross at such place would not make it negligent; though were he to do so when trains were approaching, or without looking or listening, it would doubtless be an act of negligence."

In the case of Railway v. Dean, 76 Tex. 73, 13 S. W. 45, it was held that it was negligence for Dean to attempt to cross the railway track at a place not a public crossing, without looking for the train. In the case of Railway v. Miller, 30 Tex. Civ. App. 122, 70 S. W. 25, it was held:

"It may be conceded that appellee was not a trespasser, and that after starting south appellee was guilty of no such negligence as will relieve appellant from its negligence in failing to keep proper lookout and to give the required signals of warning, yet appellee's right to the use of the track as licensee was not greater than that of appellant; on the contrary, it was subordinate, and for the preservation of human life and property generally, as well as for his own protection, it was appellee's duty before going into and upon dangerous ground to use his senses of sight and hearing. The consequence of a failure to do so is not relieved by the fact of concurring negligence on the part of another."

That doctrine was dissented from by a member of the court and went to the Supreme Court on that dissent, and the judgment of the majority was approved.

In the case of Railway v. Shivers, 48 Tex. Civ. App. 112, 106 S. W. 894, the court said:

"We understand that ordinarily contributory negligence, even when such negligence consists in a failure to look and listen for approaching cars in attempting to cross a railroad track, is a question * * * to be determined by a jury, but where, as here, the injured party himself testifies, and offers no excuse whatever for his failure to take this or any other precaution for his own safety before going into a place of known danger, no other conclusion but that of negligence can be entertained."

In this case appellee admitted that he was not excited, and, although he had seen a moving train down the track, he paid no more attention to it, and never looked in its direction, but calmly walked upon the track and remained there slapping at his horse until he was struck by the train. While an excited man might be excused for rushing before a train to rescue a child or other person, there is nothing to excuse one not under mental excitement, but moved alone by the desire to get a horse off the track, and, as his evidence shows, not knowing that the animal was in any danger whatever, and his action was negligence of the grossest character. One glance along the track towards the train he had just seen would have saved him from a maimed and disabled body. Even if appellee was a licensee upon the track, he was under obligation to exercise ordinary care for his own safety. Desiring to enter upon the railroad track where he did, he should have exercised some consideration for his own safety, and by a simple turn of the head have discovered the train that was approaching. He ought to have done this, if he had been ignorant of the fact that a train was on the track headed towards him. Railway v. Matthews, 100 Tex. 63, 93 S. W. 1068; Railway v. Edwards, 100 Tex. 22, 93 S. W. 106; Railway v. Ploeger (Tex. Civ. App.) 96 S. W. 56.

[7] Leaving the horse untied was not, as claimed by appellant, a proximate cause of the accident, no more than driving to the warehouse was a proximate cause. It is unnecessary to consider in detail the 21 assignments, or to follow the different propositions through 300 pages of printed brief. There is nothing in the case as it is presented to this court, except the question of contributory negligence.

The judgment will be reversed, and the cause remanded.